The STATE of Texas, Appellant,

v.

Cameron Edward FRYE, Appellee.

No. C14–91–01392–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 31, 1992.

Rehearing Denied Jan. 28, 1993.

**444**

William J. Delmore, III, Houston, for appellant.

Mike DeGeurin, Houston, for appellee.

Before JUNELL, ROBERTSON and DRAUGHN, JJ.

### OPINION

DRAUGHN, Justice.

The state appeals the trial court's dismissal of an indictment for prosecutorial misconduct. Two representatives of the District Attorney's office made two separate telephone contacts with appellee and recorded them without notifying his attorney. The trial court found that the appellee was denied his Sixth amendment right to counsel as a result of this behavior, and dismissed the indictment with prejudice. The trial court also found the prosecutor in question in violation of State Bar ethics rules. On appeal, the state brings three points of error, asserting that: 1) no constitutional, statutory, or common law authority exists for such a dismissal; 2) no authority exists for dismissing an indictment on the grounds of the prosecutor's failure to notify defense counsel of grand jury proceedings, and; 3) there is no evidence that such a failure to notify defense counsel occurred. We find that constitutional authority does exist for dismissing an indictment with prejudice on the basis of egregious prosecutorial misconduct, when such misconduct effectively undermines a defendant's Sixth amendment right to counsel,

such harm cannot be remedied by the mere suppression of the evidence or information obtained thereby. We, therefore, affirm the ruling of the trial court.

In April of 1988 appellee was initially charged by complaint and information with having committed a single misdemeanor offense of theft by upgrading a lower priced "coach" airline ticket to first class. The alleged offense was purportedly committed against Continental Airlines. Attorney James Dougherty appeared on appellee's behalf in this matter. Shortly thereafter, on May 16, 1988, this misdemeanor complaint and information were dismissed upon motion by the state. Explicitly noted on the order as the reason for dismissal was the notation by the state: "[c]ontinuing investigation *including this transaction.*"

At some point, Continental Airlines conducted an internal investigation as to whether appellee was engaged in a broader scheme of fraud involving the upgrading of tickets. During this investigation, Continental employees recorded a telephone conversation, and a meeting between appellee, Continental employees, and airline investigators, respectively. The state alleges that these tapes were accidentally erased while in the custody of the district attorney's office. Nonetheless, it is urged by the state that in these tapes appellee discussed at length the substance of the allegations against him.

On August 5, 1988, the Special Crimes Bureau of the district attorney's office opened a new file on the matter. This file included the abovementioned tape-recordings, as well as letters and other items provided by Continental.

On October 4, 1988, a student intern at the district attorney's office, Ms. Tracy Spoor, contacted appellee by telephone. She secretly tape-recorded the entire conversation concerning the nature of the allegations against appellee, as well as his thoughts and defensive evidence regarding the matter. Ms. Spoor informed appellee that she was a student intern with the district attorney's office and had been assigned his file. She stated that her "understanding" was that Continental Airlines "wanted to make sure they weren't in the wrong" or that the airline was "in violation." She related to appellee that she did not completely understand "what was going on," but was just "wondering if you might be able to meet with me sometime tomorrow afternoon to explain your side of the story." At her persistence, appellee finally agreed to meet with her because he believed the matter to be resolved. After informing Ms. Spoor that he would be out of town on business for several days, appellee informed her that he was represented by Mike DeGeurin. Spoor persisted in asking appellee for a face-to-face meeting, telling appellee that he seemed like a "smart guy" who could "probably help [her] out on it." Appellee specifically asked Spoor if he should first consult with his attorney before attending the meeting. Spoor replied that counsel was welcome, but that "it's no big deal."

As the conversation continued, appellee expressly stated that he did not want to provide the district attorney with any evidence that would be detrimental to him. Spoor responded that she only wanted appellee's help to "figure out" the situation. Spoor also made statements which gave the impression that Continental was considering reinstating mileage credit which was taken from appellee as a result of these allegations. All evidence in the record is contrary to this assertion. Appellee told Spoor that he would agree to a meeting, but preferred a private meeting to one in the district attorney's office. After Spoor's insistence that the meeting take place at the office, appellee initially refused, but finally acquiesced. He told Spoor that he would call his lawyer before attending the meeting, and asked Spoor if she would advise him to do so. She repeated her line about just wanting to clear up her file, to which appellee responded with the explanation of his side of the story. At one point during the conversation, appellee heard a beeping sound and asked Ms. Spoor if the conversation was being tape-recorded, to which she untruthfully responded, "No, it's just my computer." Appellee never met with Spoor following this conversation.

At the hearing on the motion to dismiss the indictment, the proffer of Spoor's testimony revealed that she would testify that her purpose was not to elicit information from appellee during the conversation, but only to set up a meeting as requested by her supervisor. The proffer of evidence also established she would testify that she did not attempt to elicit any kind of information from appellee. The trial judge agreed that she would so testify, but stated that he would not find the testimony about lack of intent to elicit information to be credible. At the hearing, appellee also challenged a subsequent contact made with him by a member of the district attorney's office.

This later contact involved Assistant District Attorney Brian K. Johnson, who was assigned appellee's case in December 1988. After he reviewed the file, Johnson spoke with Ms. Spoor about her conversation with appellee. Subsequently Johnson contacted appellee himself.[1] When Johnson telephoned appellee, he introduced himself as a prosecutor and informed appellee that he intended to present the case to a grand jury in hopes of obtaining an indictment. However, throughout the conversation, Johnson implied that he was open to appellee's explanation, and that such explanation might influence him with regard to a grand jury referral. The prosecutor informed appellee that he was aware of appellee's conversation with Spoor, but that "we have never really interviewed you or talked to you or gotten your side of the story." He inquired as to whether appellee would desire meeting with Johnson to relate his story.

At this point, appellee informed Johnson that he was represented by attorney Mike DeGeurin in the matter, to which Johnson replied that he was aware that appellee "might have mentioned that to someone." Nevertheless, Johnson continued speaking with appellee about Continental's allegations against him, urging him on with replies such as "uh-huh" and "carry on," in response to appellee's candid explanations regarding the matter. Johnson also interjected questions which encouraged appellee to continue revealing the entire theory of his defense. For example, while discussing the grand jury process, Johnson stated:

> ... In just about all, like I'm doing right here with you, I try to make some contact with the person who's being—allegations are being brought against *to see if there is any explanation that I'm not aware of or any evidence—you may have some evidence or some information that may enlighten me and could be valuable either to me or the grand jury.* So I—That's why—and you also have an opportunity for yourself to appear before the grand jurors as well. (Emphasis added).

Johnson also informed appellee that it was probably his (Johnson's) decision as to whether the case would go to the grand jury, as well as to decide who would testify before it. Johnson went on to say:

> ... A lot of cases we investigate ... to the point where we're satisfied that it's not a criminal matter. We don't even take that to a grand jury. Ah—but this one I think I am going to—or I keep saying I think—and, you know, unless again there was—there's other explanation or anything else to change my opinion but I think this needs to be referred to a grand jury. Again I'm—I'm only dealing obviously from what Continental has—what information they've given us.
>
> ... my experience has been it's a lot better to tell people things ahead of time ...
>
> That's a good question. I mean did they upgrade you for any particular reason or ...?

Several times during the conversation appellee repeated that he was represented by counsel. However, in response to the statements and questions discussed above, appellee spoke at length about his mileage credit, his explanation regarding the allega-

---

1. There is a degree of uncertainty about whether Johnson actually listened to the tape of appellee's conversation with Spoor, but Johnson testified at the hearing that he was reasonably sure he had listened to the tape, as it was in the file. He did state that he was aware of the substance of the conversation.

tions against him, his personality conflict with a particular Continental employee whom he believed to be responsible for pursuing the matter, and certain evidence he thought he could offer at trial which would illustrate his innocence. After gleaning this information, Johnson finally told appellee that he should have his lawyer contact him. Most of this conversation was secretly recorded by Johnson. Those portions not recorded were omitted only because the tape ran out. Thus, the record is silent as to how long the conversation continued, or what else might have transpired.

The grand jury returned an indictment against appellee on December 15, 1989 in Cause No. 550,420. The trial court granted appellee's motion to quash this indictment. The state acquired a second indictment for the same offenses on June 20, 1990, which was also quashed. Both of these indictments were quashed for reasons other than the legal arguments set out in this opinion.

Some time after this second indictment, appellee's counsel, Mike DeGeurin, approached Johnson about informing DeGeurin as to the date of the grand jury proceedings so that DeGeurin might request permission of the grand jury to present an exculpatory witness. Johnson agreed to notify Mr. DeGeurin. After several rescheduling conflicts, some of which were due to DeGeurin's unavailability, Johnson presented the case to the grand jury on May 28, 1991, and obtained a third indictment against appellee. There is some evidence that Johnson failed to notify DeGeurin of his action.

Appellee's counsel learned of the tape-recordings of appellee's conversations with Spoor and Johnson. As a result, appellee moved the court to dismiss the latest indictment with prejudice, on the grounds that such prosecutorial misconduct deprived appellee of his right to counsel during adversarial proceedings under the Sixth Amendment to the U.S. Constitution. After hearing all the evidence, including the tape-recordings, the trial court granted the motion to dismiss, and in connection there-with, entered certain findings of fact and conclusions of law.

### The Trial Court's Findings and Conclusions

The trial made the following findings of fact:

1. The District Attorney's Office of Harris County initiated and directly contacted the appellee on two separate occasions behind the back of his counsel and lied to the appellee when he inquired if the conversation was being recorded.

2. The conduct of Mr. Brian Johnson and Ms. Tracy Spoor in eliciting the theory of the defense from the appellee was improper, violated State Bar Rules and deprived the appellee of his right to due process and due course of law, the right to assistance of counsel, and the right to a fundamentally fair proceeding.

3. The appellee was demonstrably and severely prejudiced such that a suppression order was an inadequate remedy to prevent the State from benefitting from the fruit of their misconduct, which elicited the theory of the defense.

4. Because the tainted information was inextricably intertwined with the untainted information, if any, a meaningful segregation was unworkable. Thus, the only possible remedy is dismissal with prejudice.

In its first point of error, the state claims the trial court committed reversible error in dismissing the indictment on the basis of the prosecution's telephone communication with the defendant, in the absence of any statutory, constitutional or common law authority to take such an action.

█ The general rule in Texas is that except in certain circumstances, a court does not have the authority to dismiss an indictment unless the prosecutor requests a dismissal. *State v. Johnson*, 821 S.W.2d 609 (Tex.Crim.App.1991). Such circumstances would include when the indictment is invalid on its face, or is unduly delayed. *Id.* However, while we know of no statutes or cases which explicitly grant the authority to dismiss an indictment for prosecutorial misconduct, we have not found

any cases that require us to limit a trial court's authority to the instances listed above. To do so would preclude constitutional analysis in appropriate situations, as in the present case.

■ The state argues that the constitution provides no basis for a trial court's dismissal of an indictment for egregious prosecutorial misconduct. We disagree. The Sixth amendment to the United States constitution guarantees a criminal defendant the right to assistance of counsel. U.S.CONST. amend. VI. This fundamental right is made applicable to the states through the Fourteenth amendment. *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). The Sixth amendment right to counsel is clearly necessary in order to effectuate just results within our adversarial system. *Strickland v. Washington*, 466 U.S. 668, 685, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984). The corresponding law in Texas is provided under TEX. CONST. art. I, sect. 10 and TEX. CODE CRIM.PROC.ANN. art. 1.05 (Vernon 1977).

■ The United States Supreme Court has defined the Sixth amendment right to counsel to include not only the actual trial, but to certain pretrial critical stages of criminal cases. *Maine v. Moulton*, 474 U.S. 159, 170, 106 S.Ct. 477, 1484, 88 L.Ed.2d 481 (1985). Accordingly, the Sixth amendment right to counsel attaches at the point in which the state initiates adversary judicial proceedings. Such proceedings include formal charge, preliminary hearing, indictment, information or arraignment. *Moran v. Burbine*, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986); *United States v. Gouveia*, 467 U.S. 180, 188, 104 S.Ct. 2292, 2297, 81 L.Ed.2d 146 (1984). Similarly the Texas Court of Criminal Appeals has held that the filing of a criminal complaint constitutes the initiation of formal judicial criminal proceedings in Texas. *Barnhill v. State*, 657 S.W.2d 131 (Tex.Crim.App.1983).

■ The issue in this case, then, is whether adversary judicial proceedings were pending against the appellee at the time the prosecutorial misconduct occurred. Clearly, if such was pending, then the state violated appellee's Sixth amendment right to counsel by purposefully contacting appellee with the knowledge that he was represented by counsel, and for the purpose of eliciting incriminating testimony after the right had attached.

The state argues that appellee had no Sixth amendment right to counsel when the misconduct occurred because the second indictment had been quashed, and the third indictment had not yet been obtained. Thus, the state contends that no formal complaint or information was pending. However, the unique facts of this case lead us to find otherwise. What makes this case different is that one misdemeanor complaint was dismissed, and, for other reasons unrelated to this opinion, two felony indictments were quashed, all regarding the same alleged offenses. Significantly, it appears that the misdemeanor complaint was dismissed specifically for the purpose of upgrading the misdemeanor charge to a felony. The order dismissing the complaint made it clear that the district attorney's office was continuing its investigation of appellee, and that the investigation related to the misdemeanor offense. There is no contention by the state that all formal criminal charges ended with the dismissal of the misdemeanor complaint, (although *technically* they were,) and the language relating to the continuing investigation, including the misdemeanor offense, strongly suggests that the state was attempting to upgrade the offense pursuant to section 31.09 of the penal code. That section provides that if an offense is committed pursuant to one scheme or continuing course of conduct, and alleging all offenses together would raise the offense grade to a felony, (or higher class of felony), they may all be considered as one offense, and joined in the same indictment. TEX.PENAL CODE ANN. § 31.09 (Vernon 1974).

■ The state argues that the Sixth Amendment is offense specific and cannot be invoked once for all future prosecutions. *McNeil v. Wisconsin*, —— U.S. ——, ——, 111 S.Ct. 2204, 2207, 115 L.Ed.2d 158 (1991). This is a correct statement of the law. Especially applicable to police ques-

tioning, this rule allows an officer or prosecutor to question criminal defendants about non-charged crimes, other than the ones with which they have been formally charged, without raising any constitutional concerns. The absence of this rule would have a severe chilling effect on the state's ability to investigate non-related crimes of a charged defendant. However, we do not find *McNeil* to be applicable in the present case. As appellee pointed out in his brief and in oral argument, to apply the *McNeil* rule here would effectively extend the rule from merely being "offense specific" to "indictment specific." This cannot possibly be the law; to establish such a holding would grant the state a tool with which to circumvent the necessity of respecting a defendant's right to counsel by merely dismissing an indictment at any time. Such a rule would allow the state to merely upgrade an offense to obtain direct testimony from the defendant regarding the same crime without any effective deterrence to such improper actions.

Furthermore, the fact that the state continued to pursue the matter through three separate indictments for the same scheme illustrates, if not persistence, the existence of pending adversarial proceedings. Under the facts of this case, we find that such adversarial proceedings were never really terminated and were still pending against appellee as of the time of the initial misdemeanor complaint, and continued through the dismissal of the third indictment, because all of the indictments concerned the same basic offense.

The state suggests that there is no proof that the indictments following the misdemeanor complaint are related to the same offense. This argument falls short of reality. All of the evidence in the record indicates that the allegations against appellee all dealt with the alleged upgrading of tickets by virtue of appellee's occupation as a travel agent. All allegations specifically related to Continental Airlines, and appellee's accumulation of frequent flyer miles with that company. Contrary to the state's argument, we are hard pressed to find any evidence suggesting that the indictments related to any *other* offense than the one initially charged.

Having established that adversarial proceedings were still pending against appellee at the time of the prosecutorial misconduct so as to invoke Sixth amendment protections, we must now determine if such rights were violated, and, if so, whether appellee was harmed by this violation.

■ Once the Sixth amendment right to counsel attaches and a defendant establishes a relationship with an attorney, the deliberate attempt of the state and its agents to circumvent this relationship violates the Sixth amendment. *United States v. Morrison*, 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981); *Holloway v. State*, 780 S.W.2d 787, 795 (Tex.Crim.App.1989). Any evidence a prosecutor deliberately elicits from a criminal defendant is rendered inadmissible by virtue of the Sixth amendment. *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); *See also United States v. York*, 933 F.2d 1343, 1355 (7th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 321, 116 L.Ed.2d 262 (1991).

From the above mentioned cases it is clear that a two-prong test must be met in order to find a Sixth amendment violation has occurred, namely: 1) there must be a deliberate elicitation, and; 2) it must be made by a state agent. In the present case, Mr. Johnson and Ms. Spoor were obviously state agents since they were both employed by the district attorney's office. Furthermore, both Johnson and Spoor were aware that appellee was represented by counsel. Not only had appellee repeatedly informed them of his representation, but appellee's file reflected that he had been represented by a Mr. Daugherty in the misdemeanor matter. The state argues that although Mr. Daugherty was listed as counsel in the investigation file, Mr. Johnson was not aware of any affiliation between Daugherty and appellee's later counsel, Mr. DeGeurin. Mr. Johnson also stated in the hearing on the motion to dismiss that he did not necessarily believe appellee was represented by Mr. DeGeurin, since many criminal defendants often report being represented by well-known defense

lawyers. We fail to see the relevance of this argument. Whether appellee was represented by Daugherty or DeGeurin is not the issue. The issue is that appellee was represented by one or the other, and he exercised his Sixth amendment right to counsel by informing the district attorney's office of his representation.

The state also suggests Ms. Spoor was merely a student intern and may not have been aware that she had an obligation to cease communications with appellee upon learning that he had a lawyer. To this we have two responses. First, we find it unlikely that as a second or third year law student she was unaware of this obligation. Second, even if she was unfamiliar with this duty, her supervisor at the district attorney's office certainly was. The record reveals that Ms. Spoor was acting under the instruction of a licensed attorney in the prosecutor's office, who was presumably acquainted with constitutional law, criminal procedure, and the State Bar disciplinary rules. So even giving Spoor the benefit of the doubt does not relieve the district attorney's office of the responsibility of her actions.

Next is the issue of deliberate elicitation on the part of Johnson and Spoor. At the hearing on the motion to dismiss, Johnson testified that it was not his purpose to deliberately elicit incriminating testimony from appellee. In the proffer of Spoor's testimony it was established that if required, Spoor would similarly testify. However, all of the evidence before us is to the contrary. After reviewing the tapes in evidence, we discern no other purpose for the conversations *other* than to elicit information. Ms. Spoor repeatedly told appellee that she was calling to request a meeting in order to "clear up her file." She stated she needed appellee's help because she did not understand what the matter was about. Johnson urged appellee to reveal his defense not only through direct questions, but also by acquiescing in the conversation, and telling appellee to "carry on" with his explanations. At the very least, Johnson's acquiescence in the conversation violated appellee's constitutional right to counsel by breaching the state's obligation not to circumvent that right as required by the Supreme Court in *Maine v. Moulton*, 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985).

Furthermore, contrary to the state's contention that the purpose of the conversations was not to elicit incriminating testimony, the mere fact that both conversations were intentionally recorded suggests that such was their intent. In fact, Johnson testified that it is his practice to record such conversations, not only to protect himself, but also to preserve incriminating evidence. The fact that Ms. Spoor was untruthful about whether the conversation was being recorded also taints any suggestion that the conversations had some legitimate purpose other than to gather damaging evidence.

It is well established in Texas that once adversarial judicial proceedings have been instituted against a defendant the state may only initiate the interrogation of that person through notice to defense counsel. *Holloway v. State*, 780 S.W.2d 787, 793 (Tex.Crim.App.1989). Having failed to notify Mr. DeGeurin, and deliberately eliciting information from appellee, the state violated appellee's Sixth amendment right to counsel.

Even in light of this violation, however, dismissal of the indictment is not automatically imposed as the remedy. It must be shown that such violation harmed appellee. In its brief the state relied heavily on the cases of *State v. Johnson*, 821 S.W.2d 609 (Tex.Crim.App.1991), and *United States v. Morrison*, 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981). The state contends that *Johnson* limited the dismissal of an indictment to situations where there is a defect in the charging instrument, or when a defendant is unreasonably detained without out an indictment being properly presented. However, this language is found in a footnote to the case, and is merely dicta and certainly not exhaustive of constitutional rights accorded an accused. Furthermore, after our reading the language in *Johnson*, we reach a different conclusion. The court in listing the occasions when an indictment might be dismissed used the precatory phrase "such as when ..." This wording

does not specify all the instances in which an indictment may be dismissed, but instead merely lists examples of when such dismissal might be appropriate. Additionally, as already mentioned, the indictment in *Johnson* was dismissed because of the prosecutor's untimely appearance at trial, and did not involve important constitutional concerns as we perceive are present in this case. While not deciding the issue, the court of criminal appeals recognized that there may be exceptional circumstances when a court may dismiss a case without the consent of the prosecutor. *Id. at* 613.

With regard to the issue of whether such misconduct harmed appellant so as to merit dismissal, we too, are guided by the case of *U.S. v. Morrison, supra.* In that case, federal agents met with the defendant without her counsel's knowledge. The trial court dismissed the indictment, stating that the agents' actions violated her Sixth Amendment right to counsel. The United States Supreme Court reversed on the grounds that dismissal of the indictment was inappropriate under the facts of that case. However, the Supreme Court used certain revealing language in discussing the dismissal issue, upon which we now rely. The court held that *absent demonstrable prejudice, or substantial threat thereof,* dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate. *Id.* 449 U.S. at 365, 101 S.Ct. at 668. (Emphasis added). This language suggests that if harm or prejudice can be shown, then dismissal of the indictment may be the proper remedy.

■ *Morrison* is clearly distinguishable from the present case. In *Morrison* it was shown that no harm or prejudice occurred. However, in the case at bar, the trial court specifically found that the actions of the district attorney's office prejudiced the appellee and deprived him of adequate representation. Similarly, another state appellate court has recognized that dismissal of an indictment may be an appropriate remedy to rectify flagrant prosecutorial abuse, even in the absence of prejudice to a defendant. *See Alejandro v. State,* 725 S.W.2d 510, 513 (Tex.App.—Houston [1st Dist.] 1987, no writ), citing *United States v. Serubo,* 604 F.2d 807, 817 (3rd Cir.1979).

The state refers us to our decision in *Barre v. State,* 826 S.W.2d 722 (Tex.App.—Houston [14th Dist.] 1992, writ ref'd). In that case, we cited the *Johnson* language which generally stands for the premise that an indictment cannot be dismissed without the consent of the prosecutor. *Id.* at 725. However, no prejudice or harm was shown, and the issue was the negligent actions of the police department, and not the deliberate attempt to circumvent the defendant's right to effective assistance of counsel. We do not believe our holding in the present case to be in conflict with our decision in *Barre.* On the contrary, the two cases can easily be reconciled. As already noted, the trial court expressly found prejudice to the appellee. Furthermore, all the evidence indicates that the actions of Ms. Spoor and Mr. Johnson were intentional, deliberate, and in disregard of appellee's relationship with his lawyer. Clearly, the information obtained by virtue of this abuse harmed appellee by revealing the theory of his defense. These are facts wholly inapposite of the facts before us in *Barre.* Accordingly, we find that the misconduct on the part of the district attorney's office violated appellee's constitutional right to adequate representation.

However, the state contends that even if the actions of Spoor and Johnson constitute a violation of appellee's Sixth Amendment right to counsel, dismissal is not the proper remedy. Instead, the state argues that the correct approach is to identify the evidence obtained through inappropriate means, and preclude its use by the prosecutor. *Morrison,* 449 U.S. at 365, 101 S.Ct. at 668. This is generally known as the "fruit of the poisonous tree" doctrine. Basically, the state asks us to "identify and neutralize the taint," in this case the information obtained through the misconduct, and merely bar the state from using it against appellee. The problem with that remedy in this case is that the nature of the information obtained through the abuse touches all aspects of appellee's defense. By explaining his side of the story to Johnson and Spoor, he revealed what his testimony would be, what evidence he would attempt to present at trial, and, most significantly, he fur-

nished the prosecution with enormous insight as to what his trial strategy would be. Unlike other "fruit of the poisonous tree" cases where it is a simple matter of precluding the admission of illegally obtained evidence, such as drug paraphernalia or an improperly acquired confession, the information gleaned by Johnson and Spoor cannot be segregated from what untainted evidence might remain. The trial court specifically found that the tainted information was inextricably intertwined with the untainted information and a meaningful segregation was unworkable, and that dismissal was the only possible remedy.

The language used in *Morrison* suggests authority for dismissing the indictment. The Supreme Court stated that a trial court should identify and neutralize the taint by *tailoring suitable relief appropriate in the circumstances* to assure the defendant the effective assistance of counsel and a fair trial. *Id.* at 365, 101 S.Ct. at 668. (Emphasis added). While normally we would find that suppression of the wrongfully obtained evidence is all that is necessary, the far-reaching effect of this egregious conduct on behalf of the prosecutors in this case requires a dismissal of the indictment with prejudice. We believe this to be the only just remedy to insure the reverence of appellee's Sixth Amendment right to counsel and to deter such future conduct.

Our purpose in affirming the constitutional dismissal of the indictment is twofold: 1) to insure the respect of appellee's rights to counsel and a fair trial, and; 2) to provide an effective deterrent from similar conduct in the future. While both the state and appellee discussed the issue of whether a violation of state disciplinary rules may serve as a basis for dismissing an indictment, we decline to so rule at this time. Through our analysis of point of error one we have shown that regardless of ethics violations, the misconduct at issue is, standing alone, enough to establish a violation of appellee's constitutional rights. Accordingly, point of error one is overruled.

■ In points of error two and three the state challenges the trial court's finding that Johnson misled appellee regarding

grand jury proceedings, and, in any event, such action does not constitute ample grounds for dismissing the indictment. We agree. The record reveals some evidence that Mr. Johnson breached his promise to appellee's counsel to inform him of grand jury proceedings in order to allow appellee to present exculpatory or mitigating evidence. There is also some indication that Johnson's actions were no oversight, but instead a calculated effort at obtaining an unchallenged indictment against appellee. While, again, we do not condone the use of such tactics, it does not rise to the level of constitutional infringement. If an indictment is valid on its face, a party may not go behind the indictment to review alleged procedural errors in its presentment. *DeBlanc v. State*, 799 S.W.2d 701, 706 (Tex.Crim.App.1990); *Dean v. State*, 749 S.W.2d 80 (Tex.Crim.App.1988); *Carr v. State*, 600 S.W.2d 816, 817 (Tex.Crim.App.1980); *Tarpley v. State*, 565 S.W.2d 525, 532 (Tex.Crim.App.1978); *Black v. State*, 735 S.W.2d 897 (Tex.App.—Houston [14th Dist.] 1987, pet. ref'd). The nature of the complaint against the prosecutor's breach of his promise is to challenge the proceedings of the grand jury. Therefore, with a facially valid indictment before us, we cannot find this conduct ample reason to support the dismissal of the indictment. The state's points two and three are, therefore, sustained.

However, the trial court granted two separate motions to dismiss the indictment for prosecutorial misconduct. One dealt with the tape recordings and the violation of appellee's Sixth Amendment right to counsel. The other motion involved the breach of Johnson's promise to inform appellee of grand jury proceedings. Since two separate motions were granted, either one may serve as a basis for affirming the decision of the trial court. Therefore, we sustain points of error two and three, and overrule point of error number one, and for the reasons stated, the judgment of the trial court is

AFFIRMED.

ROBERTSON, Justice, dissenting.

I dissent because the trial court was without authority—whether statutory, con-

stitutional or at common law—to order dismissal of the indictment. Apparently the majority concedes there is neither statutory law nor common law rules authorizing the dismissal. The majority, however, concludes that the contact of appellee by the prosecution authorities violated this Sixth Amendment right, and his corresponding state constitutional right, to counsel. I believe the majority errs.

It is well-settled that one's Sixth Amendment right to counsel does not attach until the accused is the subject of "adversary criminal judicial proceedings." Appellee simply was not the subject of an adversary criminal judicial proceeding because no charges were then pending. The misdemeanor charge had long before been dismissed at the time the prosecution authorities contacted him. The majority's attempt to stretch adversarial criminal proceedings to cover any situation where an accused becomes the subject of criminal investigation simply won't wash. *Moran v. Burbine*, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). Appellee had no Sixth Amendment, nor corresponding state constitutional, right to counsel.

But even if there was authority for finding such a protected right, the majority errs in affirming the dismissal, with prejudice, of the indictment. First, the evidence does not show that the prosecution authorities learned from appellee any information about the subject matter of the indictment which was not already known to them. Finally, and probably most important, even if the prosecution authorities had learned new information from appellee, the remedy would be "to identify and then neutralize the taint by tailoring relief appropriate in the circumstances to assure the defendant the effective assistance of counsel and a fair trial." *United States v. Morrison*, 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981).

The order of the trial court dismissing the indictment should be reversed.