Wendell Vernald DUNN, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–93–00855–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

March 10, 1994.

Philip C. Banks, P.C., Bryan, for appellant.

Bill Turner, Lisa Tanner, Bryan, for appellee.

Before HEDGES, DUGGAN and O'CONNOR, JJ.

## OPINION

HEDGES, Justice.

Wendell Vernald Dunn pled no contest to aggravated robbery pursuant to a plea bargain agreement, after his motion to dismiss the indictment was denied. The trial court sentenced him to 25–years confinement and ordered restitution. We affirm.

In his sole point of error, appellant complains that the trial court erred when it denied his motion to dismiss the indictment because the State's conduct violated the sixth

amendment. He argues that the violation was so egregious that it warranted not only suppression of certain evidence, but dismissal of his indictment.

## Fact Summary

On March 3, 1993, appellant's grandmother was injured during a robbery that took place in her home. On March 16, 1993, the police arrested appellant. He gave a voluntary statement to Oscar Chavarria, a detective with the Bryan Police Department. Appellant admitted that he was present during the attack but denied that it was he who struck her or stole her property. He told police that Ray Woods committed the offense.

Appellant's case was set for trial on July 26, 1993. The week before trial, Detective Chavarria spoke with appellant in jail. Chavarria did not notify appellant's attorney before visiting him in jail.

## Appellant's Testimony

At the hearing on his motion to dismiss, appellant testified as follows: Officer Chavarria asked him about Greg Nelson, a person the officer believed had information about the case. The officer then asked him what his attorney knew about his case. Appellant stated that because he did not know anything about his case, he did not reveal anything to Officer Chavarria about his defense.

## The Officer's Testimony

Officer Chavarria testified as follows: He did not tell the prosecutor that he was going to visit appellant in jail. He happened to be in the building, and on the spur of the moment he thought he would ask appellant if he knew where Greg Nelson could be found. Officer Chavarria had received information that Nelson was present during the robbery and wanted to investigate further. Appellant told him that he had met Nelson in jail and that he thought Nelson was in town. The officer eventually located Nelson through other sources.

Officer Chavarria assumed that appellant was represented by counsel, but he did not stop to think before visiting him. He was just looking for information on Nelson and did not visit the jail to ask appellant anything about his trial or the charges against him. During their conversation, appellant volunteered that he did not want a jury trial, that he was unhappy with his attorney, and that he did not want to be tried for an aggravated offense. The officer denied asking appellant about his attorney's discoveries. Nothing appellant told him affected his investigation or presentation of the case.

## Trial Court Ruling

At the conclusion of the hearing, the trial court denied the motion to dismiss, but suppressed any testimony from Greg Nelson or Ray Woods and any mention of their involvement in the case. Appellant asserts that the State's conduct was so egregious that it required dismissal of the indictment, not merely suppression of the evidence. He argues that dismissal was the only remedy to insure that the State would not repeat such conduct. The State does not dispute that appellant's sixth amendment right was violated but contends that the trial court tailored the appropriate remedy under the facts of this case.

The sixth amendment right to counsel is clearly necessary in order to effectuate just results within our adversarial system. *Strickland v. Washington*, 466 U.S. 668, 685, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984); *Holloway v. State*, 780 S.W.2d 787, 793 (Tex.Crim.App.1989). The sixth amendment right to counsel includes not only the right to counsel during the actual trial, but also during certain pretrial critical stages of criminal cases. *Maine v. Moulton*, 474 U.S. 159, 170, 106 S.Ct. 477, 484, 88 L.Ed.2d 481 (1985); *Holloway*, 780 S.W.2d at 793. This right attaches when the State initiates adversary judicial proceedings, such as formal charge, preliminary hearing, indictment, information, or arraignment. *Moran v. Burbine*, 475 U.S. 412, 428–29, 106 S.Ct. 1135, 1145, 89 L.Ed.2d 410 (1986). Once the right to counsel has attached and has been asserted, the State must honor it. *Moulton*, 474 U.S. at 170, 106 S.Ct. at 484.

In the case before us, Officer Chavarria's conduct violated appellant's sixth amendment right when he asked him for information without notifying his counsel. Cases involving sixth amendment violations

are subject to the general rule that remedies should be tailored to the injury suffered. In *United States v. Morrison,* 449 U.S. 361, 365, 101 S.Ct. 665, 668, 66 L.Ed.2d 564 (1981), the Supreme Court stated:

> Our approach has thus been to identify and then neutralize the taint by tailoring relief appropriate in the circumstances to assure the defendant the effective assistance of counsel and a fair trial. The premise of our prior cases is that the constitutional infringement identified has had or threatens some adverse effect upon the effectiveness of counsel's representation or has produced some other prejudice to the defense. Absent such impact on the criminal proceeding, however, there is no basis for imposing a remedy in that proceeding, which can go forward with full recognition of the defendant's right to counsel and to a fair trial.
>
> More particularly, absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate.

Appellant bases his argument for dismissal of the indictment on *State v. Frye,* 846 S.W.2d 443 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd). In *Frye,* the defendant was telephoned by an intern with the district attorney's office, who was a third year law student. Although the defendant's indictment had been dismissed, he was under continued investigation. The intern secretly taped her conversation with the defendant concerning the allegations against him and any defensive evidence. *Id.* at 445. The intern persisted in trying to get the defendant to agree to meet with her so that he could explain his side of the story. The defendant told the intern that he was represented by an attorney and asked if he should consult him before talking to her. The intern responded that he could, but that "it's no big deal." *Id.*

Later, the prosecutor assigned to the defendant's case telephoned the defendant and taped part of their conversation. The prosecutor told the defendant that although he intended to present his case to a grand jury, the defendant's explanation might influence his decision whether to go forward with the case. *Id.* at 446. The defendant told the prosecutor several times he was represented by counsel. The conversation continued, however, and the defendant discussed at length his explanation for the allegations against him and brought up certain evidence he thought would prove his innocence at trial. *Id.* at 446–47. The defendant was later indicted.

The court of appeals affirmed the trial court's decision to dismiss the indictment. *Id.* at 452. The court of appeals, citing *Morrison,* stated that normally the suppression of wrongfully obtained evidence is all that is necessary to neutralize the taint and to assure the defendant the effective assistance of counsel and a fair trial. *Id.* at 452. Dismissal of the indictment was appropriate in *Frye,* however, because:

> [T]he nature of the information obtained through the abuse touches all aspects of [the defendant's] defense. By explaining his side of the story ... he revealed what his testimony would be, what evidence he would attempt to present at trial, and, most significantly, he furnished the prosecution with enormous insight as to what his trial strategy would be. Unlike other 'fruit of the poisonous tree' cases where it is a simple matter of precluding the admission of illegally obtained evidence, ... the information gleaned ... cannot be segregated from what untainted evidence might remain.

*Id.* at 451–52.

*Frye* is distinguishable from the case before us. The damage to appellant is not nearly so far reaching or pervasive. He has not shown why the trial court's remedy did not cure any harm caused by the State's violation of his sixth amendment right to counsel. He merely contends that dismissal of his indictment is appropriate to insure that similar conduct by the State will never again occur.

■ We find that the trial court's decision to suppress the testimony of Nelson and Woods and any reference to either man was an appropriate remedy to neutralize any taint caused by the State's misconduct.

*Morrison,* 449 U.S. at 365, 101 S.Ct. at 668. In affirming the trial court's order, we are not condoning the conduct of the State. We find, however, that because the solution provided by the trial court was appropriately tailored to the facts of this case, the more drastic remedy of dismissal of the indictment was not necessary to meet constitutional protections.

We overrule point of error one.

We affirm the judgment of the trial court.