In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-99-522 CR


NO. 09-99-523 CR


NO. 09-99-524 CR


____________________



RUSSELL BLAINE KISER, JR., Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 1-A District Court


Tyler County, Texas


Trial Cause Nos. 8990, 8991, 9049






O P I N I O N


 A jury convicted Russell Blaine Kiser, Jr., of two counts of aggravated robbery and
one count of escape. For each count of aggravated robbery, the jury assessed punishment
at confinement for life in the Texas Department of Criminal Justice, Institutional Division
and a $10,000 fine. For the count of escape the jury sentenced Kiser to ten years'
confinement in the Texas Department of Criminal Justice, Institutional Division and a
$10,000 fine.

 On appeal, Kiser's court-appointed counsel filed an Anders brief. (1) Subsequently,
Kiser filed a pro se brief. Applying Stafford v. State, 813 S.W.2d 503, 511 (Tex. Crim.
App. 1991), this Court reviewed the clerk's record and the reporter's record and found
arguable error. Kiser v. State, Nos. 09-99-522-CR, 09-99-523-CR, 09-99-524-CR, 2001
WL 997365 at *2 (Tex. App.--Beaumont August 29, 2001, no. pet.)(not designated for
publication). Thus, we abated the appeal and remanded the case to the trial court with
instructions to appoint other appellate counsel to present grounds that might support the
appeal. Id.

 Represented by new appellate counsel, Kiser now brings four issues.

 In his first issue, Kiser maintains the evidence was legally insufficient to support his
conviction for escape as there was no evidence presented by the State regarding an
essential element of the charged offense. The indictment alleged Kiser "intentionally or
knowingly" escaped "from the custody of GARY HENNIGAN, who was then and there
the Sheriff of Tyler County, when the said defendant was under arrest for Aggravated
Robbery, and the said defendant was then and there confined in a secure correctional
facility, namely, Tyler County Jail." 

 Kiser argues there was a material variance between the indictment charging him
with the crime of escape (2) and the evidence that was presented at trial to support a
conviction. He asserts that because the escape indictment returned by the Grand Jury
specified that he was in the custody of "Gary Hennigan, who was then and there the
Sheriff of Tyler County," testimony of Hennigan was necessary to satisfy the elements of
the Penal Code for the conviction of the offense of escape. Kiser further argues that
because there was no evidence that he departed the jail without the permission of Sheriff
Hennigan, the evidence was legally insufficient under the Jackson v. Virginia standard. 
See Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

 The State contends that Sheriff Hennigan's name did not constitute a statutory
element of the offense, and therefore, its proof was not necessary to render the evidence
legally sufficient. Moreover, the State asserts no material variance exists between the
indictment and the evidence that would have deprived Kiser of adequate notice or subjected
him to another prosecution for this escape and thus no error occurred in presentation of the
offense of escape.

 The facts pertinent to issue one occurred on the evening of Kiser's arrest and in the
following early morning hours. After Kiser was taken to the jail, Officer McCulley
testified he had jailer Brian Guillory bring Kiser to the book-in area of the jail. There
McCulley informed Kiser he was under arrest for aggravated robbery and gave him the
Miranda warnings. Officer McCulley testified that Kiser was then under arrest and in the
custody of the Tyler County Jail. Officer McCulley further testified that Kiser, as the
jailer was attempting to book him into the jail, became belligerent and was placed back into
a holding cell so that the jailer could book in two other prisoners.

 Brian Guillory testified that he is a jailer employed by the Tyler County Sheriff's
Department, that he was on duty on the night Kiser was arrested, and that he had custody
of Kiser in the jail. After Kiser refused to cooperate with Guillory in the booking-in
procedures, Guillory placed Kiser in a holding cell and booked in two other new prisoners. 
When Guillory took the other prisoners back to the holding area, he discovered that Kiser
was no longer in the holding cell. Guillory had not release Kiser. Though at the time,
Guillory believed the doors were secure, he later learned that a door on the holding cell
malfunctioned, allowing Kiser to escape. Guillory's records show that he started the
booking-in procedure for Kiser at 9:07 p.m., and that Kiser escaped sometime between
12:30 and 1:00 a.m. the next morning. Kiser's wallet and belt, which had been taken from
him and inventoried at the time of his arrest, were still at the jail after he escaped.

 After we noted that this issue appeared to constitute arguable error under Gollihar
v. State, 46 S.W.3d 243 (Tex. Crim. App. 2001), the Texas Court of Criminal Appeals
issued Fuller v. State, 73 S.W.3d 250 (Tex. Crim. App. 2002), in which the Court held
that the Gollihar/Malik material variance analysis - measuring sufficiency against a
hypothetically correct jury charge - does not apply to a claim of legally insufficient
evidence under the Jackson v. Virginia standard. See Fuller, 73 S.W.3d at 252. The
Fuller court held that a variance claim asserting that the name of the complainant was not
proven is not a legal sufficiency claim, because the name of the victim is not a statutory
element of the offense. Id. at 253.

 Under the Fuller rationale, the escape statute does not require the State to prove that
Kiser escaped from any particular individual, but only requires proof that he escaped from
"custody" while under arrest for a felony offense or while under arrest and confined in a
county jail. Issue one is overruled.

 In his second issue, Kiser asserts the trial court erred in allowing an in-court
identification of him based on the witness's prior viewing of a suggestive and improper
lineup. Kiser contends the officer who prepared the lineup was inexperienced and
prepared the lineup quickly. He further contends that the witness was not told that Kiser
"may or may not be in the photo lineup," and that the photo array was shown to the
witness as a group of six photos rather than one at a time.

 After the local police officer conducted their initial investigation, Officer Rickey
Coker prepared a photo lineup. After viewing the lineup on the day of the robbery,
witness Luke Satterwhite identified Kiser as the robber. (3) Satterwhite testified at trial that
Kiser was the robber. 

 When considering the scope of due process rights afforded a defendant regarding
the admission of identification evidence, the appellate court must determine if a pre-trial
identification procedure was so suggestive and conducive to mistaken identification that
subsequent use of that identification at trial would deny the accused due process of law. 
Barley v. State, 906 S.W.2d 27, 32-33 (Tex. Crim. App. 1995)(citing Stovall v. Denno,
388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967)). We employ a two step analysis
to determine the admissibility of an in-court identification: 1) whether the out-of-court
identification procedure was impermissibly suggestive; and 2) whether that suggestive
procedure gave rise to a very substantial likelihood of irreparable misidentification. 
Barley, 906 S.W.2d at 33 (citing Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967,
19 L.Ed.2d 1247 (1968)). The defendant must prove the two elements by clear and
convincing evidence. Id. at 33-34. "An analysis under these steps requires an
examination of the 'totality of the circumstances' surrounding the particular case and a
determination of the reliability of the identification." Id. at 33. 

 The standard of review for a ruling on a motion to suppress an in-court
identification due to an impermissibly suggestive pretrial identification procedure is the 
Guzman standard. Loserth v. State, 963 S.W.2d 770, 771 (Tex. Crim. App. 1998); 
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Whether a photographic
identification procedure was so impermissibly suggestive as to give rise to a very
substantial likelihood of misidentification is a mixed question of law and fact that does not
turn on an evaluation of credibility and demeanor and thus is subject to a de novo review.
Loserth, 963 S.W.2d at 772-73.

 Suggestiveness may be created by the manner in which the pretrial identification
procedure is conducted. Ibarra v. State, 11 S.W.3d 189, 196 (Tex. Crim. App. 1999). 
Suggestiveness would be present if the police pointed out a suspect or suggested a suspect
was included in the lineup or photo array. See Barley v. State, 906 S.W.2d at 33. Or
suggestiveness could be created by the content of the lineup or photo array itself if the
suspect is the only individual closely resembling the pre-procedure description. Id. at 33.
"Furthermore, an individual procedure may be suggestive or the cumulative effect of the
procedures may be suggestive." Id.

 "However, neither due process nor common sense requires that the physical
characteristics of the participants in a line-up be identical." Gilstrap v. State, 65 S.W.3d
322, 328 (Tex. App.--Waco 2001, pet. ref'd). Certain variances in a lineup are
acceptable. See Buxton v. State, 699 S.W.2d 212, 216 (Tex. Crim. App. 1985)(finding
no suggestive procedure constituting a violation of due process, even though the men in
the line-up ranged in height from five feet nine inches to six feet two inches, in weight
from 175 pounds to 210 pounds, had various skin tones, and wore different types of
clothing); Williams v. State, 675 S.W.2d 754, 757 (Tex. Crim. App. 1984)(finding no
impermissibly suggestive procedure even though most of the participants appeared younger
than the suspect); Garcia v. State, 563 S.W.2d 925, 929 (Tex. Crim. App. 1978)(finding
no impermissibly suggestive procedure even though the suspect was several inches taller
than the other participants in the line-up).

 Kiser does not suggest, nor does any evidence offered at the suppression hearing
indicate, that the police pointed out Kiser or suggested that Kiser was included in the
line-up. Although due process does not require that the physical characteristics of the
participants in a line-up be identical, the photo array viewed by Satterwhite was of six
white adult men. The photos are similar "book-in" style photos, with the dates blocked
out. Two of the men, but not Kiser, had long hair. Three of the men, including Kiser,
had short hair. Satterwhite had testified that the robber's head was covered with a
handkerchief, or "Doo-Rag" or bandana, and that the robber had a mustache and goatee
that looked "darkened, dirty," and was different in color from his hair under the bandana.
One of the men had a mustache, but not Kiser. Comparing this photo line-up to those
found not to be suggestive in Buxton, Williams, and Garcia, we do not find that the lineup
prepared by Officer Coker to have been "impermissibly suggestive." Thus, we do not
consider the five Biggers factors. (4) Issue two is overruled.

 Issues three and four both assert certain communications between Kiser and the
District Attorney occurred without the knowledge or consent of Kiser's attorney, and thus
violated Kiser's Sixth Amendment right to counsel. Kiser contends the trial court erred
in overruling his motions to (1) dismiss the charges against him, (2) disqualify the District
Attorney from prosecuting Kiser and (3) suppress the testimony of Candace Broom and
Lauren Broom. 

 Kiser asserts that, subsequent to the mistrial of this cause and prior to the retrial,
the District Attorney talked with Kiser at the jail where he was incarcerated. Then, Kiser
alleges, the State took statements of Candace Broom (also known as "Candy") and her
cousin, Lauren Broom, and filed an amended witness list adding the two women as
potential witnesses. Kiser also contends that subsequent to the communications, the State
filed motions to grant immunity to his co-defendants in the aggravated robberies.

 The trial court heard arguments on Kiser's motions at the pre-trial hearing. Neither
motion was accompanied by affidavits or other evidence. Further, Kiser presented no
evidence at the hearing. But trial counsel advised the court that "we have reason to believe
that [the District Attorney] went to the Tyler County Justice Center and discussed with my
client and at least one other law enforcement official the facts and other evidence
surrounding this case." Counsel asserted that "the proper thing" would have been for the
District Attorney to have called defense counsel after Kiser requested to speak to the
District Attorney. Counsel conceded that 

 [w]e may or may not have granted permission, and we may or may not have
come to Tyler County to visit with him as well. But we did not get an
opportunity. We were not notified. If the conversation took place or even
if they went and sat and listened, we feel like that the district attorney --
there is no way at this point that he can try this case even if he claims that
everything that was said in there, which I don't know what was said, but
even if he claims everything that was said I already knew, it still affects his
own personal mental thinking in the way that he's going to proceed in this
trial. We think that was illegally obtained. (emphasis added)


 Apparently seeking to demonstrate that the State derived benefit from the
conversation, Kiser's trial counsel points to certain actions of the prosecutor subsequent
to the communication. Counsel noted the prosecution added additional witnesses to the
witness list for the retrial of the case and gathered additional statements after the
conversation. Counsel also stated "[a]nd it was additional investigations, and we find it
awful curious that now we have two motions by the State granting immunity for James
Ward and Sammy Liles," Kiser's codefendants.

 At the pre-trial hearing, the District Attorney responded that Kiser had not identified
any new evidence that may have been obtained from him, and also argued that testimony
in the first trial made them aware of Candy Broom. (5) The District Attorney also stated:

 . . . I received numerous phone calls from the sheriff's department
that Mr. Kiser wanted to see me. I directed the sheriff's department to tell
him I would not talk with him, that he had an attorney, he needed to contact
his attorney. I received another call stating he did not want to see his
attorney, that he wanted - he had something very important he wanted to tell
me.

 I went to the Justice Center . . . [and] the chief deputy said that Mr. 
Kiser had to see me, and Mr. Kiser was brought in there. Mr. Kiser
proceeded to tell me that, No.1, he was not guilty. He was not going to
accept any plea bargain agreement. And before he even started, he was
advised of his rights, that he needed to talk to his attorney, that I would not
talk with him without his attorney.

 He says: I don't want my attorney under any circumstances, that I
have something to tell you.

 And that is that he was not guilty and then started off on something
else that I don't even recall. There was no recording, no notes made, no
statement taken, and absolutely nothing obtained from Mr. Kiser that is
going to be involved in this trial whatsoever.

 And any new and additional witnesses that we have are involved
through the escape or are witnesses that we already prior -- had know about
prior to this which came forth in the testimony of the case and also from re-interviewing Mr. Sammy Ward (sic). 

 Generally, a motion to suppress seeks to exclude evidence obtained illegally, usually
in violation of the Fourth Amendment (search and seizure), Fifth Amendment (privilege
against self-incrimination), or Sixth Amendment (right to assistance of counsel) to the
United States Constitution. See Jackson v. State, 65 S.W.3d 317, 320 (Tex. App.--Waco
2001, no pet.)(citing State v. Roberts, 940 S.W.2d 655, 658 (Tex. Crim. App. 1996)). 
We review a trial court's ruling on a motion to suppress evidence for an abuse of
discretion. Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996).

 Here, the District Attorney conceded at the pre-trial hearing that he talked with
Kiser without Kiser's attorney being present, but insisted that Kiser himself initiated the
conversation. (6) Under other scenarios, determining whether the conversations were "state
initiated" could be important. See State v. Frye, 897 S.W.2d 324, 327 (Tex. Crim. App.
1995). (7) But here the primary consideration is that neither side presented evidence at the
suppression hearing. The trial court heard only arguments of counsel. 

 As the movant in a motion to suppress evidence, Kiser had the burden to produce
sufficient evidence to support his motion. Cf. Russell v. State, 717 S.W.2d 7, 9-10 (Tex.
Crim. App. 1986)(when seeking to suppress evidence obtained as a result of an illegal
search, the defendant must establish (1) that a search or seizure occurred, and (2) that no
warrant was obtained). Here, Kiser had to establish that he made incriminating statements
to the District Attorney that led to the State's obtaining the testimony of the Broom
cousins, which he was seeking to suppress. But Kiser offered no such evidence. Where
the movant produces no evidence to support his motion to suppress, he fails to meet his
burden of proof. See Rodriguez v. State, 834 S.W.2d 592, 595 (Tex. App.--Houston [1st]
1992, pet. ref'd). We therefore hold that the trial court did not abuse its discretion in
denying Kiser's motion to suppress.

 Kiser further argues that the charges against him should be dismissed because the
State violated his Sixth Amendment right to counsel. 

 A trial court may not dismiss an indictment with prejudice without the prosecutor's
consent except in certain circumstances where the court is authorized by constitution,
statute, or common law. State v. Johnson, 821 S.W.2d 609, 612 (Tex. Crim. App. 1991). 
One appropriate circumstance, authorized by the Sixth Amendment to the United States
Constitution, is prosecutorial misconduct that violates a defendant's right to counsel with
such prejudice that exclusion of the evidence is no cure. See Frye, 897 S.W.2d at 330. 
Under Frye, the trial court first determines whether the defendant's Sixth Amendment right
to counsel has attached, and whether the State violated the defendant's right to counsel,
before considering whether dismissal of the indictment with prejudice is warranted. Id.
at 327-30.

 But, dismissal of an indictment with prejudice is an extraordinary and drastic
remedy, which is "warranted where a defendant suffers demonstrable prejudice or a
substantial threat thereof, and where the trial court is unable to 'identify and neutralize the
taint' by other means." Frye, 897 S.W.2d at 330 (quoting United States v. Morrison, 449
U.S. 361, 365, 101 S.Ct. 665, 668, 66 L.Ed.2d 564, 568 (1981)). The preferred methods
for neutralizing the effect of the State's violation of appellant's right to counsel are
suppressing evidence and limiting cross-examination during trial. Id. Whether prejudice
justifying a dismissal is shown is a question of fact left to the trial court's discretion. See
id. at 331.

 Here, Kiser introduced no evidence of prejudice justifiying a dismissal. Thus, the
trial court did not err in refusing to dismiss the indictment. 

 Kiser's complaint that the trial court should have disqualified the District Attorney
from prosecuting the case similarly is without merit. Kiser's motion to disqualify the
District Attorney does not state any statutory grounds for doing so. And Kiser presented
no statutory grounds at the hearing on his motion. In the absence of allegations of a
statutory basis for disqualification, the trial court had no authority to disqualify the District
Attorney. See State ex rel. Eidson v. Edwards, 793 S.W.2d 1, 5 (Tex. Crim. App. 1990). 
Issues three and four are overruled.

 Accordingly, we affirm the judgment and sentence of the trial court.

 AFFIRMED.


 ________________________________

 DON BURGESS

 Justice


Submitted on August 27, 2002 

Opinion Delivered October 16, 2002

Do not publish


Before Walker, C.J., Burgess, and Gaultney, JJ.

1. When filing an Anders brief, counsel concludes no arguable error exists that would
support an appeal. See Anders v. California, 386 U.S. 738, 87 S. Ct. 1396, 18 L.Ed.2d
493 (1967) and High v. State, 573 S.W.2d 807 (Tex. Crim. App. 1978). 
2. A person commits an offense if he escapes from custody when he is either: (1)
under arrest for, charged with, or convicted of an offense; or (2) in custody pursuant to
a lawful order of a court. See Tex. Pen. Code Ann. § 38.06(a).
3. At the hearing on Kiser's motion to suppress, Satterwhite testified that he was at
the convenience store when a person came in and robbed the store. Satterwhite testified
that he could identify Kiser at the hearing even if he had never seen the photo lineup. 
Satterwhite had "no doubt" that Kiser was the person with a gun who stood next to him
[Satterwhite] in the store and who took Satterwhite's automobile. Satterwhite testified he
was sure of his identification because he "had a long enough time to stand there and look
at him. There was nothing covering his face. When you're thinking about what the
person's next action is going to [be], you kind of study them pretty deep. You're looking
at their face." Satterwhite testified that he did not think he would ever forget Kiser's face.
4. In Neil v. Biggers, 409 U.S. 188, 199-200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972),
the United States Supreme Count enumerated several non-exclusive factors for determining
whether a very substantial likelihood for irreparable misidentification has been created. 
These factors are: 1) the witness' opportunity to view the criminal at the time of the
crime, 2) the witness' degree of attention, 3) the accuracy of the suspect's description, 4)
the level of certainty at the time of confrontation, and 5) the time between the crime and
confrontation.
5. In the first trial, Sammy Liles testified that Kiser bought beer that night before,
and that a friend, Candy, had given Kiser a ride to the store. 
6. We note that even if Kiser initiated the conversations, he could not be questioned
or interrogated regarding the crimes he was to be retried for unless he knowingly and
voluntarily waived his right to counsel, judged by the totality of the circumstances. See
Janecka v. State, 739 S.W.2d 813, 828 (Tex. Crim. App. 1987)(citing Edwards v.
Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), and Oregon v. Bradshaw,
462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983)).
7. Absent waiver of the right to counsel, an important Sixth Amendment safeguard
is the "general prohibition of state initiated questioning of an accused who is represented
by counsel during all critical stages of criminal proceedings once formal adversarial
proceedings have begun, except where counsel is present or is informed of the
interrogation." Frye, 897 S.W.2d at 327 (emphasis added).