**The STATE of Texas, Appellant,**

v.

**Cameron Edward FRYE, Appellee.**

No. 261–93.

Court of Criminal Appeals of Texas, En Banc.

March 8, 1995.

Mike DeGeurin, Houston, for appellee.

John B. Holmes, Jr., Dist. Atty., William J. Delmore, III, Brian K. Johnson, Asst. Dist. Attys., Houston, for appellant.

Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

MEYERS, Judge.

Appellee was charged by indictment with felony theft of services under Section 31.04 of the Texas Penal Code. The trial court granted appellee's motion to dismiss the indictment with prejudice and the State appealed. The Fourteenth Court of Appeals affirmed the trial court's order. *State v. Frye,* 846 S.W.2d 443 (Tex.App.—Houston [14th Dist.] 1992). The State and appellee presented separate petitions for discretionary review to this Court. We granted only the State's petition for discretionary review to determine whether the State violated appellee's Sixth Amendment right to counsel, and if so, whether the trial court had the authority to dismiss the cause without the State's consent. We will affirm.

On April 3, 1988, appellee was charged by complaint with a single misdemeanor offense of theft of services from Continental Airlines. Appellee retained the law firm of Foreman, DeGeurin & Nugent. Attorney James Doughtery of the firm appeared on appellee's behalf. On May 16, 1988 the State moved to dismiss the complaint. The prosecutor made a notation upon the State's Motion to Dismiss indicating that the theft charges were being

dismissed pursuant to a "continuing investigation including this transaction."

On August 5, 1988, the Special Crimes Bureau of the Harris County D.A.'s Office opened a new file on alleged thefts involving the appellee from Continental Airlines. On October 4, 1988, Tracey Spoor, a student intern with the D.A.'s office, telephoned appellee. During their conversation appellee heard a beeping sound and asked Spoor if the conversation was being tape recorded, to which Spoor responded, "No, it's just my computer," despite the fact that she was recording the entire conversation. Spoor informed appellee that she was a student intern with the D.A.'s office and that she had been assigned his file. Spoor also stated that the reason for the inquiry was that Continental Airlines "wanted to make sure they weren't in the wrong," or that the airline was "in violation."[1] She then asked to meet with the appellee at the D.A.'s office so that appellee could "explain his side of the story." Appellee made it known that he was represented by Mike DeGeurin, also of Foreman, DeGeurin & Nugent, and repeatedly asked if it was necessary that he contact his attorney or if he should terminate the conversation and have Mr. DeGeurin contact the D.A.'s office. Spoor did not respond to appellee's comments, other than to say that she was just trying to clear up her files, and that "it's no big deal." Appellee never met with Spoor following the October 4, 1988, conversation.

In December, 1988, appellee's file was assigned to Brian Kelly Johnson, Assistant District Attorney for Harris County, Major Fraud Division. Johnson reviewed appellee's file and spoke with Spoor about her conversation with appellee.[2] Shortly thereafter, Johnson telephoned appellee. Like Spoor, Johnson taped the phone conversation without appellee's knowledge. Johnson identified himself as a prosecutor for Harris County and informed appellee that he intended to present the case to a grand jury in order to

---

1. Spoor implied that Continental Airlines was considering reinstating mileage credits taken from appellee, and by doing so, added to the confusion, tending to mislead appellee as to the true nature of the investigation. *Frye,* 846 S.W.2d at 446.

2. Johnson appears to have listened to the tape recording of the conversation between appellee and Spoor. Johnson admits, at the very least, to having knowledge of the content of the conversation. *See Frye,* 846 S.W.2d at 446, n. 1.

obtain an indictment. Johnson stated that although he was aware of appellee's earlier conversation with Spoor, he just wanted to get appellee's "side of the story," and to schedule a meeting with appellee. Appellee repeated to Johnson that he was represented by attorney Mike DeGeurin. Johnson indicated that he was aware that appellee was represented, yet continued the conversation.[3] Throughout the course of the conversation, Johnson continued to speak with the appellee about the allegations against him, and "urged him on," with questions and replies such as "uh-huh" and "carry on."

On May 28, 1991, appellee was indicted on felony theft of services from Continental Airlines.[4] The indictment included the identical allegations as those contained in the previously filed misdemeanor complaint. The indictment also alleged additional offenses and aggregated them for purpose of raising the offense grade to that of a felony pursuant to Tex.Penal Code § 31.09. *Frye*, 846 S.W.2d at 445.

Appellee's counsel learned of the tape recorded phone conversations, and moved the trial court to dismiss the indictment with prejudice on the grounds that the conversations deprived appellee of his right to counsel during adversarial proceedings under the Sixth Amendment of the United States Constitution and Article 1, Section 10 of the Texas Constitution. On December 23, 1991, the trial court conducted a hearing on appellee's motion. After hearing evidence, including the tape recorded telephone conversations, the trial court made the following findings:

[1] The District Attorney's Office of Harris County initiated and directly contacted [appellee] on two separate occasions behind the back of defense counsel and obtained information material to the investigation, prosecution and trial of [appellee].

[2] The District Attorney's Office initiated and engaged in the two lengthy conversations directly with [appellee], even though the District Attorney's Office knew that [appellee] was represented by an attorney, [and] [b]oth conversations were without the consent of [appellee's] counsel.

[3] The District Attorney's Office surreptitiously tape recorded the conversations it initiated with [appellee] and then lied to [appellee] when he inquired if the conversation was being recorded.

[4] The conduct of the State was inappropriate, wrong, in violation of the State Bar Rules by which all attorney's shall abide, and deprived [appellee] of due process of law, due course of law, the right to assistance of counsel, and the right to a fundamentally fair proceeding.

[5] That suppression of the fruits of the State's misconduct is an inadequate remedy because the information gained through the misconduct—the theory of the defense—is incapable of suppression.

[6] That [any] suppression order prohibiting the State from benefitting from having improperly elicited the defensive theory from [appellee], ... would be fruitless for the reason, among others, that the tainted information is inexplicably entwined with the untainted, thereby rendering any segregation of the two meaningless and unworkable.

(Tr. 118–120). Based upon the "prosecutorial misconduct" of the D.A.'s office, the trial court dismissed the indictment with prejudice without the consent of the State.

---

**3.** Johnson stated that he continued the conversation with appellee despite being told that appellee was represented by counsel because he was not sure that appellee was being truthful in his claim that he was represented by Mr. DeGeurin. Like the court of appeals below, we are not of the opinion that such argument is determinative. *Frye*, 846 S.W.2d at 449–50. Whether or not the State actually believes a defendant to be represented by a particular attorney is irrelevant. Rather, the issue is whether a Sixth Amendment right to counsel was implicated and invoked, and

if so, whether the State violated that right by contacting appellee.

**4.** The indictment before us today is actually the third felony indictment returned against appellee in regard to the theft of services charges. The first indictment, returned on December 15, 1989, was quashed in June of 1990. A second indictment was returned in June of 1990 and was quashed on May 23, 1991. Both indictments were quashed on grounds not at issue in this opinion.

The Court of Appeals affirmed the decision of the trial court. The appeals court found that the filing of the misdemeanor information and complaint marked the beginning of formal adversarial proceedings against appellee. *Frye*, 846 S.W.2d at 448; *citing Moran v. Burbine*, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986); *and United States v. Gouveia*, 467 U.S. 180, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984) (stating formal adversarial proceedings begin upon formal charge, preliminary hearing, indictment, information or arraignment). The appeals court concluded appellee's Sixth Amendment[5] right to counsel had attached to the misdemeanor charges and that appellee invoked the right by retaining an attorney.

The Court of Appeals recognized that "technically" there were no charges pending against appellee after the misdemeanor complaint was dismissed, but found that appellee was still represented by counsel even after the dismissal of the misdemeanor complaint,[6] and that the misdemeanor complaint was dismissed specifically for the purpose of conducting further investigation with the intention of aggregating a number of offenses against Continental Airlines, raising the offense to a felony. *Frye*, 846 S.W.2d at 448–49. Based upon the uninterrupted attorney-client relationship and the continuing investigation, the Court of Appeals found the dismissal of the misdemeanor complaint did not terminate appellee's right to counsel under the Sixth Amendment, as applied to the misdemeanor theft of services offense. The court therefore concluded that because the Sixth Amendment right to counsel is "offense specific,"[7] and because the investigation involved the same offense as had been previously charged, the State initiated questioning of appellee without counsel violated his Sixth Amendment rights after the dismissal of the misdemeanor complaint. *Id.*

■ In its first ground for review, the State argues that the Court of Appeals erred in holding the telephone conversations were violative of appellee's Sixth Amendment right to counsel. The State contends that because appellee was not charged with a crime when the conversations occurred, formal adversarial proceedings had not begun, and therefore appellee's Sixth Amendment right had not attached to the crimes later charged in the felony indictment.

■ One of the primary purposes of the Sixth Amendment right to counsel is to preserve the integrity of the attorney-client relationship once it has been established. *Patterson v. Illinois*, 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988). Both this Court, and the United States Supreme Court have declared once an accused has a lawyer, "a distinct set of constitutional safeguards aimed at preserving the sanctity of the attorney-client relationship takes effect." *Upton*, 853 S.W.2d at 553 *quoting Patterson, supra.* Absent waiver of the right, an important safeguard provided by the Sixth Amendment is the general prohibition of state initiated questioning of an accused who is represented by counsel during all critical stages of criminal proceedings once formal adversarial proceedings have begun, except where counsel is present or is informed of the interrogation. *Patterson v. Illinois*, 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988); *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986); *United States v. Gouveia*, 467 U.S. 180, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984). The problem lies in determining what actions mark the inception of formal adversarial proceedings. The Supreme Court has declined to establish a "bright line" rule for marking when these adversarial

---

5. In his motion to dismiss appellee asserted violations of both federal and state constitutional rights to counsel. The trial court did not state upon which grounds it relied when it dismissed the indictment. Conversely, the Court of Appeals' decision relies solely upon appellee's Sixth Amendment claim. This opinion is therefore limited to appellee's federal constitutional claims. *See McCambridge v. State*, 712 S.W.2d 499 (Tex.Crim.App.1986); *Forte v. State*, 707 S.W.2d 89 (Tex.Crim.App.1986).

6. We accept as true the contentions that appellee continued to be represented by counsel despite the dismissal of the information. Both appellee and his counsel have so claimed, and the State offered no evidence to the contrary.

7. *See McNeil v. Wisconsin*, 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991).

proceedings have begun. *Gouveia*, 467 U.S. at 187–89, 104 S.Ct. at 2297–98; *Green v. State*, 872 S.W.2d 717, 729 (Tex.Crim.App. 1994) (Meyers, J., concurring). Instead the Supreme Court has left this determination to state courts to answer. *Gouveia*, 467 U.S. at 187–89, 104 S.Ct. at 2297–98; *Moore v. Illinois*, 434 U.S. 220, 228, 98 S.Ct. 458, 464, 54 L.Ed.2d 424 (1977); *Fuller v. State*, 829 S.W.2d 191, 205 (Tex.Crim.App.1992).

Similarly, this Court has not declared a "bright line rule" for determining when adversarial proceedings have commenced in Texas, thus triggering a Sixth Amendment right to counsel. *See generally Green v. State*, 872 S.W.2d 717 (Tex.Crim.App.1994) (finding a preliminary initial appearance is not a "critical stage," thus avoiding a determination of whether such appearance marks initiation of adversarial proceedings). Examples of actions which mark the initiation of formal adversarial proceedings include: filing an indictment, *DeBlanc v. State*, 799 S.W.2d 701 (Tex.Crim.App.1990) (holding no Sixth Amendment right to counsel because defendant not yet indicted); filing an information and complaint, *McCambridge v. State*, 712 S.W.2d 499 (Tex.Crim.App.1986) (holding Sixth Amendment right to counsel did not attach until complaint and information filed); arraignment, *Michigan v. Jackson*, 475 U.S. at 629, 106 S.Ct. at 1407; and an Article 15.17 "warning hearing," where arrest warrant was present, *Nehman v. State*, 721 S.W.2d 319 (Tex.Crim.App.1986).

Clearly, in regards to the misdemeanor charges, appellee's Sixth Amendment right to counsel attached when the State filed the misdemeanor complaint. *See McCambridge*, 712 S.W.2d at 502. At that time the State committed itself to the prosecution of the charges and the positions of the State and appellee were adversarial, and appellee invoked his right to counsel by hiring an attorney. *See Holloway v. State*, 780 S.W.2d 787, 793 (Tex.Crim.App.1989). However, the State later dismissed the misdemeanor charges. After dismissal, there was nothing upon which appellee could be convicted, nor were there charges under which the State could conduct a prosecution. *See State v. Moreno*, 807 S.W.2d 327, 334 (Tex.Crim.App.

1991) (actions by trial court which force the State to alter its pleadings by re-indicting or amending complaint effectively terminates criminal proceedings); *State v. Eaves*, 800 S.W.2d 220, 221 (Tex.Crim.App.1990) (because an order to "set aside" indictment was entered there was "no case pending in the court which defendant was bound to answer"). Thus, the positions of the State and appellee absolutely changed and they were no longer in legally adversarial positions. This is an important consideration.

A strict reading of cases interpreting the Sixth Amendment appears to indicate that the State did not violate appellee's right to counsel by initiating telephone conversations after the misdemeanor charges were dismissed. *Cf. Holloway*, 780 S.W.2d at 793 (stating parity between a suspect or accused and the State is critical in determining Fifth or Sixth Amendment right violations). However, appellee was still represented by counsel *after* his Sixth Amendment right attached in regards to the misdemeanor charges, and because such charges were included in the subsequent felony indictment, the question of whether the dismissal of the misdemeanor information severed the attorney-client relationship and appellee's right to counsel persists. *Cf., Green*, 872 S.W.2d at 732 (Meyers, J., concurring) (stating Sixth Amendment right to counsel may be asserted in some proceedings which are not judicial or formally adversarial where contact occurs after filing accusatory pleading); *Upton v. State*, 853 S.W.2d 548, 555 (Tex.Crim.App.1993) (indicating the question of whether representation by counsel alone activates Sixth Amendment right to counsel where judicial proceedings not yet initiated) *citing Wilkerson v. State*, 657 S.W.2d 784 (Tex.Crim.App.1983).

*Upton v. State*, 853 S.W.2d 548 (Tex.Crim. App.1993) is of particular significance here. In *Upton*, the defendant claimed the State violated his Fifth and Sixth Amendment rights to counsel by initiating interrogation after he invoked his right to counsel. Upton was arrested and arraigned on charges of theft of a Chevette from a car dealership in Paris, Texas. *Id.* at 555. Later that same day he was interrogated by police officers, and then met with an attorney. Upton's

attorney told the police that he advised his client not to make any statements to the authorities. The following day Upton was taken before a magistrate and arraigned on charges of burglary of the car dealership. *Id.* Upton was later questioned on two separate occasions, without the benefit of advice from his attorney, about the unsolved murder of the owner of the Paris car dealership. The murdered car dealer was the same person alleged to be the victim of the theft and burglary offenses which Upton was charged with committing. During the interrogations Upton made statements implicating himself in the murder of the car dealer, and was then charged with committing murder during the course of a robbery and was ultimately convicted of capital murder pursuant to V.T.C.A., Penal Code, § 19.03(a)(1). *Id.*

Upton claimed the interrogations which occurred after his arrest for the theft and burglary charges violated his Sixth Amendment right to counsel, because he was represented by counsel at the time the interrogations were conducted. Relying on *McNeil v. Wisconsin*, 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991), the State claimed that the Sixth Amendment right to counsel is offense specific and argued that Upton's Sixth Amendment right to counsel had not yet attached because Upton was not charged with murder at the time of the interrogations. This Court found that while *McNeil* dictates that the Sixth Amendment right to counsel is offense specific and will not bar police initiated interrogation for non-charged crimes, neither will the Sixth Amendment allow police initiated interrogation for crimes integrally related to previously charged offenses. *Upton*, 853 S.W.2d at 555–56. This Court held that Upton's Sixth Amendment right to counsel had attached for at least the theft and burglary charges, and that because the State presented evidence of the theft of the auto to prove an element of the robbery in the capital prosecution, we stated:

> Under these circumstances, the police were not investigating "new or additional crimes" when they obtained incriminating statements from [defendant] about the capital murder; adversarial proceedings had begun against [defendant] on at least one important element of the offense for

which he was later charged. Also the theft of the Chevette offense was so closely related to the subsequent capital murder offense that the theft offense was eventually used to aggravate the murder to capital murder.

*Id.* at 555–56. We distinguished the facts in *Upton* from *McNeil* and held that Upton's Sixth Amendment right to counsel had attached to the capital murder offense during the interrogations thus entitling him to assistance of counsel at that time.

We also noted in *Upton*, the potential for government abuse if the *McNeil* rule of offense specificity was to be applied in its most literal context. Police could intentionally circumvent Sixth Amendment protections by charging an individual with a predicate crime, for the purpose of conducting interrogation on an aggravated crime. *Id.* at 556. Or as in the instant case, dismiss all charges against an accused, put the "adversarial" process on hold to reinitiate questioning without the presence of counsel, thus giving the State the power to unilaterally sever appellee's constitutional rights and protections. Such conduct is antithetical to the purpose of the Sixth Amendment in preserving the attorney client relationship and assuring effective and complete representation at all critical stages of the criminal process.

We therefore find that even though the dismissal of the misdemeanor information and complaint altered the positions of the parties, such dismissal was accomplished specifically for the purpose of conducting a "continuing investigation including this transaction." Additionally, the charges set forth in the misdemeanor complaint were again alleged in the felony indictment and aggregated with other theft of services offenses in order to increase the offense grade to a felony. Thus, like in *Upton*, the offenses charged in the felony indictment were not "new or additional crimes" being investigated, but rather they were substantially related, and in some cases exactly the same as the charges of theft of services originally alleged in the misdemeanor information and complaint. Under the unique facts of this case, we hold that appellee's Sixth Amendment

right to counsel remained when the telephone conversations at issue occurred. We also find the conversations constituted a critical stage for Sixth Amendment purposes. *See Upton,* 853 S.W.2d at 556; *Holloway,* 780 S.W.2d at 793 (stating governmental interrogation is critical stage in Sixth Amendment analysis). Appellee was therefore entitled to assistance of counsel during the interrogations, and his Sixth Amendment rights were violated by the State initiated questioning without the knowledge or presence of counsel. The State's first ground for review is overruled.

■ Having found the telephone conversations were held in violation of appellee's right to counsel, we now turn to whether dismissal of the indictment was the appropriate remedy for the State's conduct. In its second ground for review, the State alleges that the Court of Appeals erred in holding that dismissal of the indictment was an appropriate remedy in two respects; first that the trial court did not have authority to dismiss the indictment without the State's consent, and second even if dismissal was allowed, the trial court still erred by dismissing in the instant case, "in the absence of any showing that some identifiable, irremediable harm resulted from the conversations."

The State cites this Court's holding in *State v. Johnson,* 821 S.W.2d 609 (Tex.Crim. App.1991), in support of its contention that the dismissal of the indictment was improper. The State correctly observes that *Johnson* stands for the proposition that a trial court's authority to act is limited to those actions authorized by constitution, statute, or common law. The State then contends that dismissal was inappropriate because no Texas court, before the Fourteenth Court of Appeals in the instant cause, has cited violations of the Sixth Amendment right to counsel as sufficient grounds for dismissing an indictment without the State's consent. However, lack of precedent does not preclude the Sixth Amendment from being relied upon as grounds for dismissing an indictment with prejudice. On the contrary, this Court has held that dismissal of a charging instrument may be the *only* means for adequately protecting an individual's Sixth Amendment

rights. *See Emery v. State,* 881 S.W.2d 702, 708–709 (Tex.Crim.App.1994) (holding dismissal not warranted because the facts of the case did not adequately present a claim of a violation of the Sixth Amendment for failure to provide a speedy trial); *Phillips v. State,* 650 S.W.2d 396, 399–403 (Tex.Crim.App.1983) (declaring "dismissal is the only suitable remedy for a violation of [a Sixth Amendment right to a speedy trial]"); *see also, Johnson,* 821 S.W.2d at 612, and footnotes 2–4 (specifically noting a court's authority to dismiss where constitutional protections and statutory mandates are not observed); *United States v. Morrison,* 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981).

■ The United States Supreme Court in *Morrison,* discussed circumstances under which dismissal of a charging instrument might be an appropriate remedy for violations of a defendant's Sixth Amendment right to counsel (though ultimately holding that the dismissal of the indictment was inappropriate under the facts of the case). When confronted with a Sixth Amendment violation, a trial court must, "identify and then neutralize the taint by tailoring relief appropriate in the circumstances to assure the defendant effective assistance of counsel and a fair trial." *Morrison,* 449 U.S. at 365, 101 S.Ct. at 668, 66 L.Ed.2d at 568. The Supreme Court stated that suppressing evidence and limiting cross-examination are the preferred methods for neutralizing the effects of right to counsel violations. However, the Supreme Court opined that dismissal may be warranted where a defendant suffers demonstrable prejudice, or a substantial threat thereof, and where the trial court is unable to "identify and neutralize the taint" by other means. *Id.* Because of this need to sometimes neutralize or rectify these transgressions, we are of the opinion that dismissal of an indictment, although a drastic measure only to be used in the most extraordinary of circumstances, may be necessary to adequately protect a defendant's Sixth Amendment right to counsel.

Having determined that a trial court may dismiss a charging instrument to remedy a violation of a Sixth Amendment right to counsel, we now turn to whether the Four-

teenth Court of Appeals erred in affirming the trial court's decision to dismiss the indictment in this case. The State contends that the dismissal was in error because "appellee utterly failed to demonstrate any specific harm or prejudice which would emanate from his conversations with members of the district attorney's staff[.]" State's Brief at page 17.

The record reflects that the trial court held a hearing on appellee's motion to dismiss, that evidence was offered by the State and appellee at the hearing, and that the trial court considered such evidence, including the contents of the two tape recorded conversations and the testimony of the Assistant District Attorney Johnson, prior to dismissing the indictment. The Court of Appeals agreed with the conclusion of the trial court that appellee's defensive evidence and strategies were revealed during the State initiated contacts, and that appellee suffered harm as a result. The trial court concluded that suppression of the evidence was an insufficient remedy for the violation of appellee's right to counsel under the Sixth Amendment, and that dismissal was the only remedy which would "insure the reverence of appellee's Sixth Amendment right to counsel." *Frye,* 846 S.W.2d at 452. The Court of Appeals concluded that the trial judge acted within his discretion to so rule. *Id.* Under such circumstances, we will not disturb the decisions of the Courts below by substituting our own judgment on questions of fact. *See Arcila v. State,* 834 S.W.2d 357 (Tex.Crim.App. 1992) (holding that where appellate court fairly evaluates relevant evidence using correct legal standards, that court's judgment will not be reversed where sufficiently supported by evidence and law); *see also Meraz v. State,* 785 S.W.2d 146, 152–54 (Tex.Crim. App.1990) (stating ultimate resolution of factual disputes rests with courts of appeal). The State's second ground for review is overruled, and the judgment of the Fourteenth Court of Appeals is affirmed.

---

1. A similarly situated accused person who is unrepresented by counsel may unilaterally waive his Sixth Amendment right to counsel. See, e.g.,

McCORMICK, Presiding Judge, concurring and dissenting.

Finding myself in disagreement with some of the majority's analysis of the State's first ground for review, I concur only in the result the majority reaches under this ground.

I agree with the majority that under the "unique facts of this case" and the rationale of *Upton v. State,* 853 S.W.2d 548 (Tex.Cr. App.1993), appellee's Sixth Amendment right to counsel had attached by the time the telephone conversations at issue occurred, and these conversations constituted a critical stage for Sixth Amendment purposes. However, as a matter of federal constitutional law, I disagree with that part of the majority opinion which holds appellee's "Sixth Amendment rights were violated by the State initiated questioning without the knowledge or presence of counsel." In this case, it is unnecessary to go so far because it is enough to say the record supports a finding that appellee had not waived his Sixth Amendment right to counsel when the conversations occurred. See *Brewer v. Williams,* 430 U.S. 387, 405–06, 97 S.Ct. 1232, 1243, 51 L.Ed.2d 424 (1977).

The majority opinion holds, based on this Court's prior holdings in *Holloway v. State* and *Upton,* that an accused may not unilaterally waive his Sixth Amendment right to counsel where the accused's Sixth Amendment right to counsel has attached and the accused is represented by counsel.[1] See *Upton,* 853 S.W.2d at 553; *Holloway v. State,* 780 S.W.2d 787, 796 (Tex.Cr.App.1989). On this point *Upton* and *Holloway* should be reexamined.

*Holloway* was intended to decide what the United States Supreme Court meant in *Patterson v. Illinois* when it said, "a distinct set of constitutional safeguards aimed at preserving the sanctity of the attorney-client relationship takes effect" where an accused's Sixth Amendment right to counsel has attached and he is represented by counsel. *Patterson,* 487 U.S. at 290 n. 3, 108 S.Ct. at 2393 n. 3; *Holloway,* 780 S.W.2d at 791; see

---

*Patterson v. Illinois,* 487 U.S. 285, 291, 108 S.Ct. 2389, 2394, 101 L.Ed.2d 261 (1988).

*Upton,* 853 S.W.2d at 553. *Upton* followed the holding in *Holloway.*

However, my research reveals the United States Supreme Court has not yet said what these "distinct set of constitutional safeguards" are. See, e.g., *Upton,* 853 S.W.2d at 553 n. 2. And, my research also reveals the United States Supreme Court has not adopted, as a matter of federal constitutional law, this Court's holdings in *Holloway* and *Upton* at least with respect to police-initiated interrogation of an accused similarly situated to the appellee here. On the contrary, it appears the Supreme Court would hold, as a matter of federal constitutional law, that an accused can unilaterally waive his Sixth Amendment right to counsel even where the accused's Sixth Amendment right to counsel has attached and the accused is represented by counsel. See *Brewer,* 430 U.S. at 405–06, 97 S.Ct. at 1243:

> "The Court of Appeals did not hold, nor do we, that under the circumstances of this case [the defendant] *could not,*[2] without notice to counsel, have waived his rights under the Sixth and Fourteenth Amendments. (Footnote Omitted) It only held, as we do, that he did not."

Therefore, I would overrule *Holloway* and *Upton* to the extent they hold, as a matter of federal constitutional law, that an accused may not unilaterally waive his Sixth Amendment right to counsel where the accused's Sixth Amendment right to counsel has attached and the accused is represented by counsel. I would hold an accused may unilaterally waive his Sixth Amendment right to counsel under such circumstances.

Most of the rationale of the majority opinion is aimed at "preserving the attorney client relationship and assuring effective and complete representation at all critical stages of the criminal process." But, this is only one part of the balance. There are other considerations which are not mentioned in the majority opinion. For example, it should not offend the Sixth Amendment for an adult fully informed of his rights to choose to unilaterally waive his Sixth Amendment rights and talk to the police. Does the Con-

stitution require us to treat accused persons like children or adults capable of making their own decisions? And, the accused still retains the right to preserve the attorney client relationship and assure the "effective and complete representation at all critical stages of the criminal process" by simply informing the police questioners he will not deal with them without counsel, or by keeping his mouth shut. The choice remains with the accused, and the Constitution should not relieve a fully-informed accused of the consequences of voluntarily talking to the police without counsel.

> ". . . . [T]he living witness is an individual human personality whose attributes of will, perception, memory and *volition*[3] interact to determine what testimony he will give."

*Oregon v. Elstad,* 470 U.S. 298, 310, 105 S.Ct. 1285, 1293, 84 L.Ed.2d 222 (1985).

The majority opinion also fails to discuss the latitude the Constitution gives to law enforcement agencies in the legitimate exercise of their duties and the importance of the "need" for confessions for effective law enforcement. See, e.g., *Miranda v. Arizona,* 384 U.S. 436, 480–81, 86 S.Ct. 1602, 1631, 16 L.Ed.2d 694 (1966); see also *Elstad,* 470 U.S. at 298, 105 S.Ct. at 1285 (voluntary statements are a proper element in law enforcement). The consideration here is whether the Constitution excludes from the prosecution's case a truthful and voluntary confession from an accused who is fully informed of his rights and who voluntarily chooses to talk to the police even though the accused's Sixth Amendment right to counsel has attached and he is represented by counsel. See, e.g., *Elstad,* 470 U.S. at 305–10, 105 S.Ct. at 1291–93. I would hold the Constitution does not require the exclusion of such statements.

Based on the foregoing, I would overrule the State's first ground for review simply because the record supports a finding that appellant did not waive his Sixth Amendment right to counsel.

Additionally, I join Judge Keller's dissenting opinion.

---

2. Emphasis in original.

3. Emphasis in original.

KELLER, Judge, dissenting.

I part company with the majority and concurring opinions over one issue: whether the trial court had authority to dismiss the indictment against appellee without the consent of the state. Because I believe that the trial court lacked jurisdiction to do so, I dissent.

In *State v. Johnson,* 821 S.W.2d 609, 612 (Tex.Crim.App.1991), this Court addressed the specific question of whether a court has any authority to dismiss a criminal case without the prosecutor's consent. Recognizing that a court's authority to act is limited to those actions authorized by constitution, statute, or common law, we stated:

> [W]e find no statutory or constitutional provision which would imply a court's authority to dismiss a case without the State's consent, in contravention of the common law. In sum, there is no general authority, written or unwritten, inherent or implied, which would permit a trial court to dismiss a case without the prosecutor's consent.

*Johnson, id.,* at 613.

Because the trial court lacked the authority to dismiss the indictment without the consent of the State, I respectfully dissent.

McCORMICK, P.J., and WHITE and MANSFIELD, JJ., join.