NO.
12-07-00009-CR

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

SAUL ARROYO,       §                      APPEAL FROM THE 114TH

APPELLANT

 

V.        §                      JUDICIAL DISTRICT COURT OF

 

THE STATE OF TEXAS,

APPELLEE   §                      SMITH
COUNTY, TEXAS

                                                                                                                                                           
            OPINION

 

            Saul Arroyo
appeals his conviction for murder.  In
five issues, he argues that the trial court should have dismissed the
indictment, that the trial court made erroneous evidentiary rulings, and that
the trial court gave an improper jury instruction.  We affirm.

 

Background

            Because
Appellant does not contest the sufficiency of the evidence, we will briefly
state the facts that support the conviction. 
A witness testified that she saw Appellant attacking or fighting with
Joel Garcia.  Garcia went into the witness’s
house, and Appellant left.  Appellant
returned a short time later with a gun and shot Garcia, killing him.  

            A
Smith County grand jury indicted Appellant for the offense of murder.  Prior to trial, the  district attorney, some of his staff, and an
FBI agent had a meeting with Lucretia Goodines, Appellant’s sister.  The stated purpose of the meeting was to
discuss the testimony Goodines could provide, but the district attorney also
informed Goodines of a sentencing recommendation he was willing to make, asked
her to communicate that offer to Appellant, and asked her to let him know if
there was any response.  Shortly after
the meeting, an investigator who had been present at the meeting called
Goodines.  She was at the jail to deposit
money in Appellant’s inmate trust account, and the investigator went to the
jail to serve her with a subpoena.  While
at the jail, the investigator arranged for Goodines to meet with Appellant.

            Appellant
filed a motion to dismiss the indictment, arguing that the indirect
communication between the district attorney and Appellant, who was represented
by counsel, violated his right to counsel. 
The trial court held a hearing on the matter and denied the motion.

            A
trial was held, and the jury found Appellant guilty as charged.  Punishment was assessed at life imprisonment
and a fine of $10,000.  This appeal
followed.

 

Dismissal of
the Indictment

            In
his first issue, Appellant argues that the trial court should have dismissed
the indictment because his right to counsel was violated.  Specifically, he argues that indirect contact
between the State’s lawyers and a represented person creates a taint on the
proceedings that can be remedied only by dismissing the indictment.

            A
trial court may dismiss an indictment when the government subverts or otherwise
infringes on a represented person’s right to counsel.  State v. Frye, 897 S.W.2d 324,
331 (Tex. Crim. App. 1996) (en banc).  In
Frye, employees of the district attorney’s office contacted a
person who was represented by counsel and elicited information about defense
strategies.  Id. at 325–26.  The court of criminal appeals concluded that
this was a violation of the defendant’s Sixth Amendment right to counsel.  The court did not disturb conclusions by the
trial court and the court of appeals that the defendant’s defensive evidence
and strategies were revealed as a result and that dismissal with prejudice was
the appropriate remedy.  Id.
at 331.

            In
this case, the trial court concluded that the district attorney communicated
with a person who was represented by counsel. 
But, Goodines, the intermediary between the State and Appellant, never
again communicated with the district attorney or his staff after the initial
meeting.  Terming it a “probable
violation” of Appellant’s Sixth Amendment right to counsel, the court concluded
that dismissal was not appropriate because no information had been elicited
from Appellant.

            At
oral argument, Appellant conceded that the State did not learn anything about
defensive strategies or anything at all from Appellant or Goodines.  Rather, Appellant argued that the harm was “intrinsic”
to the violation and that the relationship between him and trial counsel was
irrevocably damaged.  But Frye
stands for the proposition that the remedy, which can include dismissing an
indictment, must be tailored to neutralize the “taint.”  Id. at 330 (“Because of this
need to sometimes neutralize or rectify these transgressions, we are of the
opinion that dismissal of an indictment, although a drastic measure only to be
used in the most extraordinary of circumstances, may be necessary to adequately
protect a defendant's Sixth Amendment right to counsel.”).  Therefore, a freestanding violation of
Appellant’s Sixth Amendment right, if these facts constitute such a violation,
does not require a dismissal because there is no taint to be neutralized.  

            As
to a deterioration of the relationship between Appellant and trial counsel,
there is no evidence in the record to suggest that occurred.  Appellant did not seek to develop such
evidence prior to trial or in a motion for new trial.  Cognizant of the possibility of such a
deterioration, the trial court asked Appellant if he had problems with or
complaints about his trial counsel’s representation.  He responded: “With my lawyer, is that I was
never really - - I don’t know.  You know,
I plan on talking to some other attorneys to know what’s really going on.  I don’t know nothing about this case.”  While not a glowing assessment of the current
relationship between Appellant and trial counsel, this is not evidence of any
deterioration of the attorney/client relationship resulting from the State’s
actions.

            We
conclude that the trial court’s determination that there was no harm occasioned
by the State’s actions or taint to be removed is correct.  Therefore, the trial court did not err in not
dismissing the indictment.  We overrule
Appellant’s first issue.

 

Limitation
of Cross Examination

            In
his second issue, Appellant argues that the trial court erred when it limited
his cross examination of an eyewitness to the offense.  Specifically, he argues that he should have
been permitted to ask the witness about her citizenship status.

Standard of Review

            The
constitutional right to confront witnesses, guaranteed by the Fifth Amendment
to the United States Constitution, is violated when appropriate cross
examination is limited.  See Carroll v. State,
916 S.W.2d 494, 497 (Tex. Crim. App. 1996). 
Nevertheless, there are several areas where cross examination may be
inappropriate and, in those situations, the trial court has the discretion to
limit cross examination.  Id.
at 498 (citing Delaware v. Van Arsdall, 475 U.S. 673, 682, 106 S.
Ct. 1431, 1436-37, 89 L. Ed. 2d 674 (1986)). 
Exposing a witness’s motivation to testify for or against the accused or
the State is a proper and important purpose of cross examination, and parties
are allowed great latitude to show “any fact which would or might tend to
establish ill feeling, bias, motive and animus on the part of the witness.”  Carpenter v. State, 979 S.W.2d 633,
634–35 (Tex. Crim. App. 1998).  And a
defendant generally has broad latitude to probe possible biases, prejudices, or
ulterior motives of a witness as they may relate directly to issues or
personalities in the case at hand.  Davis
v. Alaska, 415 U.S. 308, 316, 94 S. Ct. 1105, 1110, 39 L. Ed. 2d 347
(1974).  But the proponent of a vein of
cross examination must show the relevancy of the questions.  Carpenter, 979 S.W.2d at
635.  In the context of a witness with
pending criminal charges, the court of criminal appeals has recognized that
such charges may place the witness in a “vulnerable relationship” with the
State and that probing that relationship may be appropriate where the proponent
can show “some causal connection or logical relationship between the pending
charges and the witness’s ‘vulnerable relationship’ or potential bias or
prejudice for the State.”  Id.;
McDuff v. State, 939 S.W.2d 607, 618 (Tex. Crim. App. 1997)
(permissible to show serious pending state charges against accomplice witness
because it might have affected his testimony as a witness for the State).

Analysis

            Appellant
has not shown that the witness’s immigration or citizenship status was relevant
or that it placed her in a vulnerable relationship with the State.  The question that drew an objection was, “By
the way, are you an American citizen?” 
The trial court sustained an objection to that question.  Later, Appellant made a bill of the witness’s
testimony outside the presence of the jury. 
The bill consisted of thirteen questions.  Four questions were about another
witness.  Two questions were about
whether the Tyler Police Department had made the witness any promises or
whether she had received any “benefits or favors regarding her status of being
in the United States in return for testifying in the trial.”  The remaining questions were devoted to
determining that she was, in fact, illegally in the country and that she
received food stamps, did not drive, and rented a home.  

            Appellant
argues that these questions should have been allowed because the fact that she
was in the United States illegally “when taken with the fact that her husband
was back in Mexico leaving her with the children, could show and establish a
bias on [her] part . . . and a willingness to assist law enforcement.”  We disagree. 
If Appellant had shown that the witness’s lack of citizenship or a
lawful right to be in the United States created a vulnerable relationship
between her and the State or tended to do so, it could have been relevant to
probe the nature of the relationship and any benefits that were bestowed.[1]  And the two questions about whether she had
received benefits or favors from the police could have been relevant despite
her denial if it were suggested or shown that she was receiving such benefits.  But no such evidence was proffered.

            Whether
a person is in the United States legally or otherwise is a fact like any
other.  When it is relevant, it may be
admitted or be the subject of inquiry.  See,
e.g., Alvarado v. State, No. 01-03-00289-CR, 2004 Tex.
App. LEXIS 5019, at *8 (Tex. App.–Houston [1st Dist.] 2004, pet. ref’d) (mem.
op., not designated for publication). 
Appellant has failed to show that the witness’s legal status was
relevant.  See Smith v. State,
681 S.W.2d 734, 737 (Tex. App.–Houston [14th Dist.] 1984, pet. ref’d).  Consequently, we hold that the trial court
did not abuse its discretion when it did not allow questions about the witness’s
citizenship status.  We overrule
Appellant’s second issue.

 

Evidentiary
Rulings

            In
his third issue, Appellant argues that the trial court erred when it allowed
the State to impeach its own witness. 
Specifically, Appellant argues that the party who calls a witness may
not impeach that witness, and that the impeachment was improper.  In his fourth issue, Appellant argues that
the trial court should not have allowed his bail bond contract for unrelated
charges to be introduced because it was more prejudicial than probative.

Standard of Review

            We
review a trial court’s rulings on the scope of cross examination or impeachment
of a witness for an abuse of discretion. 
See Carroll v. State, 916 S.W.2d 494, 498 (Tex.
Crim. App. 1996) (plurality opinion); Arnold v. State, 36 S.W.3d
542, 546 (Tex. App.–Tyler 2000, pet. ref’d). A trial court abuses its
discretion if its ruling is not based on reasonable interpretations of the law
and is outside the zone of reasonable disagreement.  Montgomery v. State, 810 S.W.2d
372, 391 (Tex. Crim. App. 1991) (op. on reh’g).

            Texas
Rule of Evidence 403 provides that relevant evidence must be excluded if it has
a danger of unfair prejudice that substantially outweighs its probative
value.  A proper rule 403 analysis
includes, but is not limited to, the following factors: (1) the probative value
of the evidence,  (2) the potential to
impress the jury in some irrational, yet indelible, way, (3) the time needed to
develop the evidence, and, (4) the proponent’s need for the evidence.  Prible v. State, 175 S.W.3d 724,
733 (Tex. Crim. App. 2005).  We review a
trial court’s application of these factors for an abuse of discretion.  Id.

Analysis

            A party may impeach its own
witness.  See Rousseau v. State,
785 S.W.2d 387, 390 (Tex. Crim. App. 1990). 
Appellant acknowledged this at oral argument, and we overrule this part
of his third issue.

            Appellant
also argues that it was improper for the State to impeach Jose Arroyo with
questions about his daughter Susanna Arroyo’s flight to Mexico.  Susanna Arroyo is Appellant’s sister.  Both Appellant and Susanna left the country
and went to Mexico after each had participated in the killing of two different
individuals.  Both were convicted of
those murders after having been returned to the United States.  See generally Arroyo v. State,
239 S.W.3d 282 (Tex. App.–Tyler 2007, pet. ref’d).  The State sought to ask Jose if he visited
Appellant and Susanna in Mexico City. 
Appellant objected, outside the presence of the jury, to this line of
questioning.  The trial court overruled
his objection.

            The
State then elicited from Arroyo that his daughter had been wanted for a capital
murder that occurred in 1999, that she fled to Mexico, and that he visited her
in Mexico and did not volunteer to law enforcement that he had seen her.  The State began this line of inquiry because
Jose gave testimony that seemed, to the State, to be sheltering to
Appellant.  The shooter drove away in
Jose’s truck.  Jose had told the police
that he had given a set of the keys to the truck to Appellant, but would not
testify to that on the stand, stating that he did not know if Appellant had a
set of keys.  The theory behind the cross
examination was that Jose was willing to go to some lengths to protect his
children.

            Some
of the questions were germane to the issue of whether Jose would assist his
children.  But we agree with Appellant
that several of the questions were on topics not relevant to that question.[2]  Whether Jose would assist his children by not
making an unsolicited call to the police about their location has a relatively
low probative value.  But the fact that
Susanna was on the run after murdering a person and the fact she was wanted for
the “stabbing and beating death of Adam Carrier” were not relevant to
determining to what lengths Jose would go to assist his children and had the
propensity to encourage the jury to make inferences about Appellant’s conduct
based on the parallels between their stories. 
See Carroll, 916 S.W.2d at 497 (Trial court may
limit cross examination on irrelevant subjects.). 

            Even
if this is error, however, it is harmless. 
Appellant himself injected before the jury that Susanna had been found
guilty of murder.  Even the erroneous
admission of evidence is harmless if the same evidence is offered by a
defendant in another part of the trial.  See
Saldano v. State, 232 S.W.3d 77, 102 (Tex. Crim. App. 2007).  In this case, Appellant not only reelicited
each fact about Susanna’s flight to Mexico during his cross examination of
Jose, but he went further and informed the jury that Susanna had been convicted
of murder.  Arguably, this was part of a
strategy to show that the children were different and is something that
Appellant offered only because the State had been permitted to ask about
Susanna.  See Leday v. State,
983 S.W.2d 713, 717-18 (Tex. Crim. App. 1998).  But by going beyond the State’s questions
with a question establishing that Susanna had been convicted of murder,
Appellant went beyond what was necessary to meet the issues presented and
introduced an additional and unnecessary fact. 
Therefore, any error in allowing the questions of Jose is harmless
because Appellant introduced additional facts that subsumed any harm occasioned
by the initial questions.  We overrule
the remainder of Appellant’s third issue.

            In
his fourth issue, Appellant argues that the bail bond papers were more
prejudicial than probative and should not have been admitted.  The authorities recovered Appellant’s bond
papers for unrelated misdemeanor offenses from a house adjacent to the house
where the shooting occurred.  The State
introduced these documents arguing that they were relevant to show that
Appellant lived in the home and that his decision to move to Mexico was not
simply a desire for a change of scenery. 
      Applying the Prible factor
analysis, we hold that the trial court did not abuse its discretion.  The evidence is probative.  It establishes or suggests that the dwelling
next to the murder scene was Appellant’s house or home base.  Where he lived was a contested issue.  Further, it buttresses the State’s argument
that Appellant’s flight to Mexico was indicative of guilt.  The more obligations a person has in Smith
County, the less likely the person is to move to another country without a
compelling reason.  

            On
the other hand, bail bonds correlate with criminal charges, and such evidence
could impress the jury in an irrational and indelible way.  Most jurors probably do not have experience
with bail bonds.  Some would consider the
matter distasteful and could draw adverse conclusions about those who had
experience with bail bonds.  However, the
trial court redacted the offense information from the face of the bonds, and
the amount of the bonds were relatively low ($1,000).  A jury inclined to probe the matter would
likely conclude that the bonds were for minor offenses.  Because the charged offense in this case is
so weighty, murder, we think it unlikely that any impression this evidence may
have made on the jury would overcome their judgment.  The amount of time needed to develop the
evidence was low; the documents were simply introduced.  And the need for the evidence was high.  Placing Appellant near the scene of the
shooting and explaining his flight to Mexico were two important features of the
circumstantial part of the State’s case. 
This evidence filled that role and was necessary.  

            We
conclude that the trial court did not abuse its discretion when it allowed the
State to introduce Appellant’s bail bonds. 
We overrule Appellant’s fourth issue.

 

Flight
Instruction

            In
his fifth issue, Appellant argues that the trial court should not have
instructed the jury that it could consider flight as evidence of Appellant’s
consciousness of guilt.  The State
responds that no such instruction was given. 
Appellant conceded this at oral argument.  We have examined the record, including the
jury charge, and overrule Appellant fifth’s issue.

Disposition

            Having
overruled Appellant’s five issues, we affirm the judgment of the
trial court.

 

 

 

                                                                                                    BRIAN HOYLE   

                                                                                                               Justice

 

 

Opinion
delivered February 29, 2008.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(PUBLISH)











[1]
We do not understand the city police or the district attorney to play a role in
the enforcement of immigration laws, and there is nothing in the record to
suggest that the witness was vulnerable to the police because of her
immigration status.





[2]
In its brief, the State does not offer a justification for the line of inquiry
other than to establish that it is permitted to impeach its own witness.  At trial, the explanation offered is as
follows: “Judge, Susanna Arroyo was also on the run in Mexico.  I know he visited Susanna Arroyo in
Mexico.  And I want to ask him about that
as a bias to his testimony and also about the fact that he was visiting her,
and Saul was also in Mexico City.  I
think it goes to his testimony and his propensity to try to protect his
children with his testimony.”