The STATE of Texas, Appellant

v.

Dedric Lemon HARBOR, Appellee.

No. 01–11–00574–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

April 19, 2012.

John J. Harrity III, Assistant District Attorney, Fort Bend County, Gail Kikawa McConnell, Assistant District Attorney, Richmond, TX, for Appellant.

Joyce M. Phoenix Richmond, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices HIGLEY and BROWN.

## OPINION

LAURA CARTER HIGLEY, Justice.

Appellant, the State of Texas, appeals the trial court's dismissal of the State's charge against appellee, Dedric Lemon Harbor. In three issues, the State argues the trial court erred by dismissing the charge against appellee.

We reverse and remand.

## Background

Appellee was charged by information with assault—family violence.[1] The charge stemmed from an incident with appellee's girlfriend, Alice Lampkin, which occurred on May 2, 2010. Lampkin and appellee were at a bar that night, and a verbal fight ensued. The verbal fight continued in Lampkin's car as she drove them home. At one point during the drive home, appellee punched the front windshield, breaking it. The verbal fight escalated and led to a physical altercation while the car was parked in the middle of the street.

The police were notified and arrived on the scene. A police officer spoke with Lampkin that night and the conversation was recorded on a video. Appellant was arrested on that date.

The case was set on the court's docket for May 4, 2011. Ultimately, the trial commenced on May 24, 2011. On May 25, before any witnesses had testified, appellee's attorney raised some objections to the video recording of Lampkin's conversation with the police. While portions of the video had been previously redacted, appellee's attorney sought four additional redactions. The trial court granted two of the requested redactions and denied the other two. The portion that should have been redacted that is pertinent to this appeal is a claim by Lampkin that appellant had previously assaulted the mother of his children. The lead prosecutor indicated she would have to turn the video over to their office to have it edited while the trial commenced.

The State then called Lampkin to the stand. She admitted that she had been subpoenaed to appear and that she did not want to be there to testify. During her examination, she asserted that she had hit appellee first during their argument. When asked whether she had told the police that night that appellee had hit her first, she asserted that she could not remember anything she told the police that night based on how drunk she was at the time.

Next, the State called Branisha Hunter, a witness who had driven by appellee and Lampkin during the incident. The witness testified that she did not see anyone hit anyone else, but did see appellee punch and kick the rear of Lampkin's car. The witness asked Lampkin if she needed her to call the police. Lampkin said yes. Hunter dialed 9–1–1 and subsequently left.

Officer Hernandez, with the Missouri City Police Department, was the next witness to testify. He was one of the officers on the scene following the incident. He dealt primarily with appellee that night.

The State then called Sergeant York, with the Missouri City Police Department. He was also at the scene following the incident. He dealt primarily with Lampkin. The video recorder in his vehicle recorded Sergeant York's conversation with Lampkin that night.

After the trial court admitted the video recording of Lampkin over appellee's objections, the video was published to the jury. The video still contained Lampkin's statement that appellee had previously assaulted the mother of his children. Appellee moved for a mistrial, and the trial court granted it.

Trial was reset for June 7, 2011. On that day, appellee filed a motion to dismiss. Appellee argued in the motion that the charge against him should be dismissed

---

1. *See* Tex. Penal Code Ann. § 22.01(a) (Vernon 2011); Tex.Code Crim. Proc. Ann. art. 42.013 (Vernon 2006).

because (1) the State had failed to move forward with trial in a timely manner; (2) it was a waste of the trial court's resources to try the case because he had already been in jail longer than the maximum sentence for the alleged offense; and (3) the State could already revoke his parole based on his prior plea in another matter. Appellee presented the same arguments at the hearing on that day.

The trial court granted appellee's motion to dismiss. In its findings of fact and conclusions of law, the trial court concluded:

1. The trial court has the authority to grant a mistrial.
2. The State's error in failing to redact portions of the video as ordered by the Court was motivated by bad faith or undertaken to harass or prejudice the Defendant.
3. The Court has the authority to dismiss a case with prejudice based on the State's bad faith or intent to harass or prejudice the Defendant.
[4]. The State is barred from retrying the case based on double jeopardy.
[5]. The Court's actions were . . . in the interest of justice.

### Standard of Review

 We review a dismissal of a charge under a bifurcated standard. *State v. Krizan–Wilson,* 354 S.W.3d 808, 815 (Tex.Crim.App.2011). We give almost total deference to a trial court's findings of facts that are supported by the record, as well as mixed questions of law and fact that rely upon the credibility of a witness. *Id.* In contrast, we apply a de novo stan-

dard of review to pure questions of law and mixed questions that do not depend on credibility determinations. *Id.*

### Analysis

The State argues in three issues that the trial court erred by (1) concluding it had the authority to dismiss the case with prejudice based on the State's bad faith or intent to harass or prejudice the appellee; (2) concluding that double jeopardy barred retrial; and (3) concluding that its actions were in the interest of justice.

 Trial courts do not have an inherent authority to dismiss a charging instrument without the consent of the State. *State v. Mungia,* 119 S.W.3d 814, 816 (Tex. Crim.App.2003). Instead, any authority to dismiss a charging instrument without the consent of the State must derive from a statute, the common law, or the state or federal constitutions. *Id.; see also* TEX. CODE CRIM. PROC. ANN. art. 27.03 (Vernon 2006) (allowing motion to set aside indictment on three grounds "[i]n addition to any other grounds authorized by law"). Neither the trial court nor appellee, at trial or on appeal, has identified what specific authority allowed the trial court to dismiss the charge against appellee without the consent of the State. We consider, then, whether the grounds presented by appellee and the trial court are authorized by statute, common law, or constitution.[2]

### A. Statutory or common law authority

The first ground for dismissal presented by appellee was that the State had failed to move forward with trial in a timely manner. Dismissal for failure to provide a

---

2. We note that at least some of the grounds the trial court relied upon for dismissal of the information are different than the grounds argued by appellee in his motion to dismiss. The State has not raised the issue on appeal of whether a trial court can raise and grant

grounds for dismissal sua sponte. Accordingly, we do not reach—and nothing in this opinion should be construed as a ruling on—whether the trial court can dismiss a charging instrument on grounds not raised in a motion filed by either party.

speedy trial is a statutory ground for dismissal with prejudice. Tex.Code Crim. Proc. Ann. art. 28.061 (Vernon 2006). The legal analysis for whether dismissal is proper, however, is governed by the law concerning the Sixth Amendment of the United States Constitution. *See Dragoo v. State,* 96 S.W.3d 308, 313 (Tex.Crim.App. 2003) (analyzing denial of motion to dismiss based on lack of speedy trial under Sixth Amendment law). Accordingly, we will analyze this further under constitutional authority, below.

Appellee's next argument was that it was a waste of the trial court's resources to try the case because he had already been in jail longer than the maximum sentence for the alleged offense.[3] Appellee does not cite, and we have not found, any common-law or statutory authority for a trial court to dismiss based on appellee's incarceration for a period longer than the maximum sentence for the alleged offense. Accordingly, this could not have been a ground for the trial court to have granted the dismissal.

Finally, appellee argued that the State could revoke his parole based on his prior plea in a felony matter. As argued by the State at the hearing, this is a power vested in the parole board, not the prosecutor's office. There is no common-law or statutory authority for a trial court to dismiss based on the parole board's ability to revoke parole based on a conviction of a separate charged offense. This could not have been a ground for the trial court to have granted the dismissal.

In its findings of fact and conclusions of law, the trial court concluded that it had "the authority to dismiss a case with prejudice based on the State's bad faith or intent to harass or prejudice the Defen-

dant." The trial court did not identify the authority that allowed it to dismiss based on the State's alleged bad faith or intent to harass or prejudice the appellee. Appellee does not cite, and we have not found, any common-law or statutory authority for a trial court to dismiss based on the State's alleged bad faith or intent to harass or prejudice the appellee. Accordingly, this could not have been a ground for the trial court to have granted the dismissal.

Finally, the court concluded that the State was barred from retrying the case based on double jeopardy. Double jeopardy is a constitutional matter. U.S. Const. amend. V; Tex. Const. art. 1, § 14. Accordingly, we will analyze this further under constitutional authority, below.

We hold that there is no common-law or statutory authority supporting appellee's or the trial court's grounds for dismissal.

**B. Constitutional Authority**

The Court of Criminal Appeals has recognized that a charging instrument may be dismissed with prejudice, without the permission of the State, based on constitutional violations of the right to a speedy trial, the right to counsel, due process, and double jeopardy. *See Mungia,* 119 S.W.3d at 816 (recognizing right to dismissal based on violations of right to speedy trial and right to counsel); *Krizan–Wilson,* 354 S.W.3d at 814 (stating standard of review and applicable law for considering whether trial court erred by dismissing charging instrument based on due process violation); *Ex parte Lewis,* 219 S.W.3d 335, 371 (Tex.Crim.App.2007) (adopting United States Supreme Court rule in determining "when to grant double jeopardy relief after a defense-requested mistrial"). It has also

---

3. It is important to note that appellee did not move for his release. Instead, he moved for

dismissal of the information.

recognized that other constitutional violations may warrant dismissal with prejudice without the permission of the State. *Mungia,* 119 S.W.3d at 817. We consider, then, whether the grounds presented by appellee or the trial court satisfy any of these grounds.

### 1. Right to Speedy Trial

■ A defendant in a criminal prosecution "shall have a speedy public trial by an impartial jury." Tex.Code Crim. Proc. Ann. art. 1.05 (Vernon 2005). This requirement also derives from the Sixth Amendment to the United States Constitution. U.S. Const. amend. VI.; *Dragoo,* 96 S.W.3d at 313. "If a motion to set aside an ... information ... for failure to provide a speedy trial is sustained, the court shall discharge the defendant. A discharge under this article is a bar to any further prosecution for the offense charged...." Tex.Code Crim. Proc. Ann. art. 28.061.

■ Courts utilize a balancing test to determine whether an accused has been denied his right to a speedy trial. *Dragoo,* 96 S.W.3d at 313 (citing *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2191–92, 33 L.Ed.2d 101 (1972)). Under this *"Barker"* test, "[t]he factors to be weighed in the balance include, but are not necessarily limited to, the length of the delay, the reason for the delay, the defendant's assertion of his speedy trial right, and the prejudice to the defendant resulting from the delay." *Id.* The defendant carries the burden of proving the assertion of the right and showing prejudice. *Cantu v. State,* 253 S.W.3d 273, 280 (Tex.Crim.App. 2008). The State, in contrast, bears the burden of justifying the length of the delay. *Id.* "[T]he greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial." *Id.* at 280–81.

■ "In general, courts deem delay approaching one year to be 'unreasonable enough to trigger the *Barker* enquiry.'" *Dragoo,* 96 S.W.3d at 314. The original trial was set for approximately one year after appellee was arrested. The new trial was set for two weeks later. This weighs in favor of finding a violation of the speedy trial right. *See id.*

In explaining the delay, the State pointed out that the case was originally set on the court's docket for May 4, 2011. The State argued that the district court had control over the docket as to the settings of criminal cases. *See* Tex.Code Crim. Proc. Ann. art. 33.08 (Vernon 2006). The State further argued that one of appellee's prior attorneys agreed to set the trial on May 24th. Finally, after the mistrial was declared, the new trial was set for two weeks later. No evidence or argument was presented to contradict these arguments. This does not weigh in favor of finding a violation of the speedy trial right.

While failure to assert a right to a speedy trial does not constitute waiver, it does "indicate strongly that he did not really want a speedy trial." 96 S.W.3d at 314. The longer the defendant waits to assert his right to a speedy trial, the more heavily the inaction weighs against him. *Id.*

Here, appellee never asserted his right to a speedy trial until after a mistrial had been declared on the first trial and until the day the second trial was set to commence. Given that appellee participated in the first trial without complaint and the second trial was only two weeks later, this weighs heavily against finding a violation of the speedy trial right.

■ In assessing the prejudice to the defendant, the court must consider the defendant's interests that the speedy trial

right was designed to protect: "(1) to pre-vent oppressive pretrial incarceration; (2) to minimize the accused's anxiety and concern; and (3) to limit the possibility that the accused's defense will be impaired." *Id.* at 315. While excessive delay creates a presumption that the defense will be impaired, this presumption is extenuated by the defendant's acquiescence in the delay. *Id.*

Here, the evidence established that the parole board was considering revoking appellee's probation, appellee had pleaded guilty to another offense, and appellee had not complained about the length of his incarceration until the day of the second trial. This weighs against finding a violation of the speedy trial right.

Weighing all of the factors together, we hold that appellee failed to establish a violation of the right to a speedy trial that was grave enough to warrant a dismissal of his case.

### 2. Right to Counsel

 Dismissal may be warranted due to a violation of the right to counsel guaranteed under the Sixth Amendment of the United States. *State v. Frye,* 897 S.W.2d 324, 330 (Tex.Crim.App.1995). There is no suggestion, however, that this right has been violated in this case. *Cf. id.* (holding Sixth Amendment violation where defendant who was represented by counsel was contacted twice by district attorney's office). Accordingly, there is no evidence of a Sixth Amendment violation that could support the trial court's grant of appellee's motion to dismiss.

### 3. Due Process

 " '[T]he Due Process Clause [of the Fifth Amendment] has a limited role to play in protecting against oppressive delay.' " *Krizan–Wilson,* 354 S.W.3d at 814 (quoting *United States v. Lovasco,* 431 U.S. 783, 789, 97 S.Ct. 2044, 2048, 52

L.Ed.2d 752 (1977)). The test includes a potential element of bad faith on the part of the State, similar to the conclusion of bad faith reached by the trial court. *Id.* at 815. This cannot be the basis of the trial court's ruling, however, because due process violations for oppressive delay concern *pre*-indictment delays. *Id.* at 814. It is undisputed that appellee was arrested on the same day that the alleged offense occurred. The information was filed in court 15 days later. We hold that a 15-day delay between the occurrence of the alleged offense and the filing of the information does not violate due process by oppressive delay.

### 4. Double Jeopardy

 Double jeopardy attaches after a mistrial is declared on a defendant's motion when the evidence establishes that the State engages in acts intended to cause a mistrial. *Ex parte Lewis,* 219 S.W.3d 335, 360, 371 (Tex.Crim.App.2007) (citing *Oregon v. Kennedy,* 456 U.S. 667, 675, 102 S.Ct. 2083, 2089, 72 L.Ed.2d 416 (1982)). Bad faith, harassment, and overreaching are not a part of the analysis. *Id.* at 360. Instead, double jeopardy attaches "when the prosecutorial 'conduct giving rise to the successful motion for a mistrial was intended to provoke [or goad] the defendant into moving for a mistrial.' " *Ex parte Masonheimer,* 220 S.W.3d 494, 506 (Tex.Crim.App.2007) (quoting *Kennedy,* 456 U.S. at 676, 679, 102 S.Ct. at 2089, 2091).

 As the State argues, the trial court did not make any findings consistent with a determination that the prosecutor in this case intended to provoke a mistrial by failing to redact the video. Nor do we determine that a review of the record supports any such findings. The lead prosecutor indicated she would have to turn the video over to her office to have it edited

while the trial commenced. Additionally, the case was not going poorly to support an inference that the State was trying to obtain a mistrial. While Lampkin denied on the stand that appellee had struck her first and insisted that she could not recall what she told the police that night, the video in question established what she told police that night, which was an unequivocal claim that appellee had struck her first. Additionally, photographs admitted into evidence showed that Lampkin had swelling under one of her eyes consistent with being hit and that her hair piece had been pulled out with strands of hair still falling from her head. Furthermore, the State had the testimony of Hunter, who heard Lampkin ask her to call the police, and two police officers that were on the scene that night, who testified what they saw as well what Lampkin told them.

There is no indication that the State was having much difficulty establishing its case to support an inference that the State had a motivation to intentionally provoke a mistrial. We hold that double jeopardy did not bar the State from retrying the case.

### 5. Other Constitutional Violations

 The Court of Criminal Appeals has recognized that there may be other constitutional violations that require dismissal with prejudice of the charging instrument without the consent of the State. *See Mungia,* 119 S.W.3d at 816–17. In that circumstance, dismissal will be appropriate when "necessary to neutralize the taint of the unconstitutional action." *Id.* at 817.

 We do not need to determine whether any other constitutional violation has occurred because, even if it has, we hold that it is not necessary to dismiss the charge against appellee in order to neutralize the taint. The unredacted video contained a hearsay statement of an alleged prior extraneous offense. *See* TEX.R. EVID. 404(b), 802. When a prior extraneous offense is improperly admitted into evidence and the admission is harmful, the cure for that is a new trial, not dismissal. *See Webb v. State,* 36 S.W.3d 164, 183–84 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd) (granting new trial after finding error and harm in admission of prior extraneous offense); *Pollard v. State,* 255 S.W.3d 184, 191 (Tex.App.-San Antonio 2008) *aff'd on other grounds,* 277 S.W.3d 25 (Tex.Crim.App.2009). The same is true for improperly and harmfully admitted hearsay. *See Fuller v. State,* 501 S.W.2d 112, 114 (Tex.Crim.App.1973) (holding hearsay statement was not so prejudicial as to require new trial).

We sustain the State's three issues.

### Conclusion

We reverse the trial court's judgment, granting of the information against appellee, and remand for a new trial.